UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– v. –                                                    17 Cr. 419 (KMK)

LEIBYS MERCEDES,
 a/k/a "Celly,"

                        Defendant.


**THE GOVERNMENT'S OPPOSITION TO MOTION TO PRECLUDE EXPERT
TESTIMONY**


                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York
                                        300 Quarropas Street
                                        White Plains, New York 10601

Samuel L. Raymond
Celia V. Cohen
Michael D. Maimin
Assistant United States Attorneys
   *- Of Counsel -*

## <u>TABLE OF CONTENTS</u>

I.     Preliminary Statement.................................................................................. 2

II.    Background ................................................................................................... 2

III.   Argument ...................................................................................................... 5

     A.     Agent Ferentini's Expert Testimony Is Admissible.............................. 6

         1.     Relevant Facts ........................................................................... 6

         2.     Applicable Law .......................................................................... 7

         3.     Discussion .................................................................................. 9

IV.    Conclusion ................................................................................................. 11

## I.      Preliminary Statement

The trial of Leibys Mercedes, a/k/a "Celly," is scheduled to begin before this Court on June 11, 2018.  At that trial, one key piece of evidence will be recordings of a large number of phone calls, as well as text messages, involving Mercedes and his co-conspirators, which were intercepted pursuant to court-authorized wiretaps.[1]  As will not surprise the Court, much of what Mercedes and his co-conspirators discuss—as well as others on the calls and text messages—is in a language not readily accessible to the average juror, but commonplace among drug dealers.  As is frequently done in these types of cases, the Government plans to call an expert—DEA Special Agent Anthony Ferentini—to help decipher the calls and text messages, and place them in the context of a wholly-commonplace drug-trafficking organization.  Agent Ferentini—who was not involved in the instant investigation—is an expert in the distribution of controlled substances, and would testify about general matters related to heroin distribution in general, heroin distribution in and around Westchester and the Bronx Counties over the period of February 2017 to June 2017, and the use and meaning of certain slang and coded terms by narcotics distributors.  This testimony would be based on the expertise Agent Ferentini has derived from approximately nine-years of investigating narcotics cases, including in Westchester and the Bronx, and is admissible under Federal Rule of Evidence 702.

## II.     Background

On July 6, 2017, a grand jury returned Indictment 17 Cr. 419 (KMK), which charged Leibys Mercedes, a/k/a "Celly," in one count with participating in a conspiracy to distribute and

---

[1] Mercedes has indicated that he will stipulate to the introduction of these calls—as well as transcripts of those calls—and text messages.

possess with the intent to distribute one hundred grams and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 846.  Mercedes is scheduled to go to trial on June 11, 2018.

At trial, the Government will establish that Mercedes supplied heroin to his co-conspirator, Christopher Coleman, which Coleman in turn packaged and resold to other dealers—including co-conspirator Jonathan Acquino—for redistribution.  The Government will prove the conspiracy's existence, and Mercedes's participation in that conspiracy, through, among other evidence, intercepted communications, law enforcement surveillance, GPS data, witness testimony, and physical evidence.  The communications that were intercepted were phone calls and text messages with cellphones used by Acquino (the "Acquino Wires"), and Coleman (the "Coleman Wires"). Communications on both the Acquino Wires and the Coleman Wires are relevant: they establish the existence and nature of the charged drug-trafficking conspiracy; and Mercedes was personally intercepted on the Coleman Wires, discussing heroin that Mercedes had supplied to Coleman, as well as the money that Coleman owed Mercedes in return.

As is typical in drug cases, people intercepted on the Acquino and Coleman Wires— including Mercedes himself—use specific terminology related to narcotics and narcotics packaging and discuss sums of money in reference to purchasing and selling heroin; Coleman also discusses fentanyl with other individuals on the wire.[2]  They also refer to prices and quantities that indicate that the product they were discussing was heroin.

---

[2] As Agent Ferentini will explain, fentanyl—a dangerous narcotic on its own—is frequently used to "cut" heroin.  Indeed, some of the heroin seized from Coleman upon his arrest was, in fact, cut with fentanyl.

On May 4, 2018, the Government timely gave expert notice to Mercedes, explaining that it intended to call Agent Ferentini to testify about:[3]

> (1) the pricing of heroin in or around Westchester and New York Counties, in New York, during the timeframe of the charged conspiracy at both wholesale and retail levels; (2) the packaging and preparation of heroin for sale and distribution at wholesale and retail levels; (3) the use of fentanyl by distributors of heroin, including the chemical relationship between fentanyl and heroin; (4) logistics and financial arrangements among narcotics distributors; and (5) the use and meaning of slang and coded language by narcotics distributors.

On May 14, 2018, Mercedes moved this Court to preclude Agent Ferentini's expert testimony, or, in the alternative, for a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Dkt. No. 69). Mercedes argued that:

> that this "expert testimony" is inadmissible because it is unreliable, speculative and not relevant (FRE 401 & 402), it is inadmissible character evidence (FRE 404), it is not proper opinion evidence (FRE 702), and because it violates FRE 704(b), it violates the province of the jury, and finally, that the prejudicial effect of such evidence outweighs any probative value it may have.

(*Id.* at 2). Mercedes cited no cases and did not explain his assertions of the bases for inadmissibility. Indeed, two of the rule of evidence he cited—Federal Rules of Evidence 404 and 704(b)—do not appear inapplicable in any way.[4]

---

[3] The Government also gave notice that it planned to call Joseph Jacaruso "to testify about controlled substance analys[e]s he performed" and Reginald V. Donaldson, Sr. "to testify regarding the use and location of cellular telephone numbers associated with the defendants and their co-conspirators." Mercedes has not objected to those experts or their testimony.

[4] Federal Rule of Evidence 404 prohibits "[e]vidence of a person's character or character trait … to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). The Government did not proffer that Agent Ferentini would testify about Mercedes's character or character traits. Federal Rule of Evidence 704(b) prohibits "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). The Government did not

### III.   Argument

Agent Ferentini is well-qualified to provide expert testimony about: (1) the pricing of heroin in or around Westchester and New York Counties, in New York, during the timeframe of the charged conspiracy at both wholesale and retail levels; (2) the packaging and preparation of heroin for sale and distribution at wholesale and retail levels; (3) the use of fentanyl by distributors of heroin, including the chemical relationship between fentanyl and heroin; (4) logistics and financial arrangements among narcotics distributors; and (5) the use and meaning of slang and coded language by narcotics distributors.  As detailed below, his expertise is due to his knowledge, skill, experience, and training, and his specialized knowledge will help the jury to understand the evidence, as well as to determine the facts in issue, namely, the nature of the conspiracy as well as the defendant's familiarity with—and therefore participation in—the underlying objects of that conspiracy.  In doing so, Agent Ferentini would be providing commonplace expert testimony that has been approved repeatedly by the Second Circuit.

Mercedes has offered no reason to doubt that: (1) Agent Ferentini's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" (Fed. R. Evid. 702(a)); (2) Agent Ferentini's testimony will be "based on sufficient facts" (Fed. R. Evid. 702(b)); (3) Agent Ferentini's testimony will be "the product of reliable principles and methods" (Fed. R. Evid. 702(c)); or (4) Agent Ferentini will "reliably appl[y] the principles and methods to the facts of the case" (Fed. R. Evid. 702(d)).  Moreover, Mercedes has offered nothing more than *ipse dixit* to explain why Agent Ferentini's proposed testimony would be "unreliable,

---

proffer that Agent Ferentini would testify about Mercedes's mental state or condition and, indeed, mental state or condition are not elements of 21 U.S.C. § 846.

speculative, and not relevant" or would be unfairly prejudicial—such an explanation would likely be foolhardy, since Agent Ferentini's proposed testimony is highly probative and cuts to the heart of the case—or otherwise "violates the province of the jury."[5]   Needless to say, therefore, Mercedes has similarly offered no reason for this Court to go through a *Daubert* hearing; indeed, he has not even proffered what issues would be raised at such a hearing.

Accordingly, this Court should permit Agent Ferentini's expert testimony at trial.

### A.    Agent Ferentini's Expert Testimony Is Admissible

#### 1.    Relevant Facts

Agent Ferentini has been a DEA agent for approximately nine years, during which time he has participated in hundreds of narcotics investigations involving both wholesale and street-level distribution of narcotics, including heroin.  Agent Ferentini has spent his nine year service in Group D32 of the DEA's Manhattan office.  Agent Ferentini's training as a DEA agent includes broad-based narcotics training at the DEA Academy in Quantico, Virginia, which involved instruction on drug identification, drug testing, and the identification of drug paraphernalia, and packaging.

During Agent Ferentini's tenure at the DEA, he has participated in numerous narcotics investigations involving the use of wiretaps, including listening to and interpreting the meaning of calls and text messages involving drug talk.  Some of these wiretaps involved the distribution of heroin.  Agent Ferentini has served as the affiant in ten or more Title III wiretaps.  Agent Ferentini has also participated in numerous narcotics seizures, including seizures of heroin, crack cocaine,

---

[5] It is unclear in what way Agent Ferentini's testimony could "violate the province of the jury," particularly in light of the fact that his testimony is specifically permitted to "embrace[] an ultimate issue."  Fed. R. Evid. 704(a).

and marijuana, as well as narcotics paraphernalia.  Agent Ferentini has investigated specific cases in which street-level dealers of heroin in Yonkers bought their heroin supply from individuals located in the Bronx.  Agent Ferentini has previously testified in two federal trials, though not as an expert witness.

Agent Ferentini was not involved in the underlying investigation in this case.  Rather, he is assigned to the DEA's Manhattan office; whereas the case agents are assigned to the Westchester County Office of the DEA.  He has not yet read or listened to any of the communications intercepted pursuant to the Aquino and Coleman Wires.

### 2.    Applicable Law

Pursuant to the Federal Rules of Evidence:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.  Under this standard, expert testimony is generally admissible if it will assist the trier of fact to understand the evidence or to determine a fact in issue.  *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("[E]xpert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts. Because of their specialized knowledge, their testimony can be extremely valuable and probative . . . .").  The decision to admit expert testimony rests soundly with the discretion of the trial court.  *See United States v. Schwartz*, 924 F.2d 410, 425 (2d Cir. 1991).

The Second Circuit has repeatedly affirmed that law enforcement officers with knowledge, training, and experience in narcotics investigations are qualified to testify regarding the "weight, purity, dosages, and prices of [narcotics]," because such testimony is "clearly related to knowledge

7

beyond the ken of the average juror." *United States v. Tapia-Ortiz*, 23 F.3d 738, 741 (2d Cir. 1994); *see also*, *e.g.*, *United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003) ("we have consistently upheld the use of expert testimony to explain both the operations of drug dealers and the meaning of coded conversations about drugs." (collecting cases)). "[D]rug dealers often camouflage their discussions and that expert testimony explaining the meaning of code words may 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting Fed. R. Evid. 702).

The Second Circuit has also recognized limits to such testimony, particularly when the law enforcement expert is the "case agent" who investigated the underlying matter, or the de facto case agent. *See, e.g.*, *Dukagjini*, 326 F.3d at 53; *United States v. Mejia*, 545 F.3d 179, 196 (2d Cir. 2008). The concerns are that a case agent testifying as an expert may (1) testify "about the meaning of conversations in general, beyond the interpretation of code words" and (2) "impermissibly rely upon and convey hearsay evidence" developed during the underlying investigation. *Dukagjini*, 326 F.3d at 55; *see also Mejia*, 545 F.3d at 190, 192 ("case agents testifying as experts are particularly vulnerable to making sweeping conclusions about the defendant's activities" rather than properly testifying as "sociologists" who can describe "the operation, symbols, jargon, and internal structure of criminal organizations") (citations omitted). Even while recognizing these limits and describing the concerns, the Second Circuit has never suggested that law enforcement experts can no longer appropriately "interpret[] jargon or coded messages, describ[e] membership rules, or explain[] organizational hierarchy." *Mejia*, 545 F.3d at 195 (internal citations omitted). To the contrary, the Second Circuit has "consistently upheld the use of expert testimony to explain both the operations of drug dealers and the meaning of coded conversations about drugs." *United*

8

*States v. Pinzon-Gallardo*, 639 F. App'x 701, 705 (2d Cir. 2016) (quoting *Dukagjini*, 326 F.3d at 52) (internal quotation marks omitted); *see also*, *e.g.*, *United States v. Vertil*, 566 F. App'x 36, 39 (2d Cir. 2014) (noting that the appellant conceded "that federal courts routinely allow law enforcement officials with specialized knowledge in narcotics trafficking to offer expert testimony"); *United States v. Carmona*, 361 F. App'x 166, 170 (2d Cir. 2010) ("We have long recognized that 'drug dealers rarely speak openly about their trade; instead, they often engage in a so-called 'narcotics code.''" (quoting *United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995)); *Mejia*, 545 F.3d at 189-90.

### 3.    Discussion

The Court should deny Mercedes's unfounded motion to preclude Agent Ferentini's expert testimony or, in the alternative, to hold a *Daubert* hearing.

First, Agent Ferentini is well-qualified to serve as an expert witness regarding narcotics distribution.  Rule 702 explicitly permits a witness to testify as an expert on the basis of "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Agent Ferentini has nine years of experience as a federal drug enforcement agent; he has participated in scores of investigations, trainings, wiretaps, and narcotics seizures.  "[Y]ears and years of being involved in investigating narcotics" qualify a skilled investigator as an expert under Rule 702.  *United States v. Lopez*, 547 F.3d 364, 373 (2d Cir. 2008).

Second, Agent Ferentini's anticipated testimony is relevant.  This case involves a complex narcotics conspiracy, and the evidence includes jargon-filled wire communications.  Agent Ferentini's testimony will give needed context to explicate how narcotics conspiracies are often structured, including their financial arrangements, and will give important context to help the jury understand the wire communications.  Agent Ferentini will also testify about the pricing of heroin

9

in the relevant locations during the charged conspiracy, which will serve to corroborate the quantity of heroin that Mercedes, and Coleman, distributed.  These are all directly relevant to the charge in the Indictment, and are "beyond the ken of the average juror."  *Tapia–Ortiz*, 23 F.3d at 741.

Third, Agent Ferentini will not be a fact witness and is not a case agent.  Accordingly, this Court need not worry about the Second Circuit's cautious approach to testimony by dual fact/expert law enforcement witnesses, *see*, *e.g.*, *United States v. Cruz*, 363 F.3d 187, 195 (2d Cir. 2004), or case agents, *see*, *e.g.*, *Dukagjini*, 326 F.3d at 55; such concerns are related only to "the danger that his expert testimony will stray from 'applying reliable methodology and convey to the jury … [his] sweeping conclusions about [a defendant's] activities,'" *Cruz*, 363 F.3d at 195 (quoting *Dukagjini*, 326 F.3d at 54).  Rather, because Agent Ferentini was not involved in the investigation into Mercedes and his co-conspirators, his testimony would be precisely the type of expert testimony that the Second Circuit has "consistently upheld" "to explain both the operations of drug dealers and the meaning of coded conversations about drugs."  *Dukagjini*, 326 F.3d at 52.

Fourth, no *Daubert* hearing is necessary.  "While courts must exercise their gatekeeper function regarding expert testimony, a separate pretrial hearing is not always required."  *United Sattes v. Diakhoumpa*, 171 F. Supp. 3d 148, 152 (S.D.N.Y. 2016) (citing *United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007); *United States v. Santiago*, 199 F. Supp. 2d 101, 112 (S.D.N.Y. 2002)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (noting that trial courts must have such discretion "to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted").  By way of example, the Honorable Sterling Johnson, United States District Judge, denied a *Daubert* hearing where the

10

Government offered a law enforcement witness as "an expert witness in the field of prostitution and sex trafficking of minors," where that witness "has worked on numerous cases involving child prostitution, has interviewed under[-]aged prostitutes, and is familiar with the industry." *United States v. Kelly*, No. 07 Cr. 374 (SJ), 2008 WL 5068820, at *8-*9 (E.D.N.Y. July 10, 2008). Here, the "foundation [is] sufficient to establish the proffered testimony's reliability," and Mercedes "may of course challenge this reliability via cross-examination of [Ferentini], but a separate evidentiary hearing is not required." *United States v. Mavashev*, No. 08 Cr. 902 (DLI), 2010 WL 234773, at *4 (E.D.N.Y. Jan. 14, 2010) (citing *Kumho*, 526 U.S. at 152; *Williams*, 506 F.3d at 160-61).

## IV.    Conclusion

For the foregoing reasons, the Court should deny Mercedes' motion to preclude the expert testimony of Anthony Ferentini or, in the alternative, to hold a *Daubert* hearing about that testimony.

Dated:  White Plains, New York
        May 25, 2018

                                        Respectfully submitted,
                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York

                            By:    /s_____
                                        Samuel L. Raymond
                                        Celia V. Cohen
                                        Michael D. Maimin
                                        Assistant United States Attorneys
                                        (914) 993-1946/1953

11