UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

     – v. –

LEIBYS MERCEDES,
 a/k/a "Celly,"

             Defendant.

17 Cr. 419 (KMK)

**THE GOVERNMENT'S MOTION *IN LIMINE* REGARDING RULINGS ON CERTAIN SUBSTANTIVE ISSUES, PRECLUSION OF CROSS-EXAMINATION OF CERTAIN WITNESSES REGARDING CERTAIN MATTERS, AND THE GOVERNMENT'S RESPONSE TO DEFENDANT'S OPPOSITION TO ADMISSION OF GOVERNMENT EXHIBITS**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Samuel L. Raymond
Daniel Loss
Michael D. Maimin
Assistant United States Attorneys
   *- Of Counsel -*

## TABLE OF CONTENTS

I.      Preliminary Statement................................................................................................1

II.     Background ..............................................................................................................1

III.    The Court Should Allow Certain Evidence to Be Offered at Trial......................................2

    A.      Relevant Facts ...............................................................................................2

        1.      Acquino and Coleman Wires ........................................................2

            a.      Identification of Acquino and Coleman on the Acquino and Coleman Wires....................................................3

            b.      Identification of "Celly" as Mercedes.....................................4

        2.      Arrests of Acquino, Coleman, and Mercedes ...............................6

        3.      Testimony of a Cooperating Witness...........................................6

    B.      Applicable Law ..............................................................................................7

        1.      Wire Authentication.....................................................................7

        2.      Co-Conspirator Testimony............................................................7

        3.      Probation Records ........................................................................9

    C.      Discussion ...................................................................................................10

        1.      Wire Authentication...................................................................10

        2.      Co-Conspirator Testimony..........................................................10

        3.      Probation Records ......................................................................11

IV.     The Court Should Preclude Mercedes From Engaging in Certain Lines of Cross-Examination ................................................................................................................12

    A.      Relevant Facts .............................................................................................12

        1.      The CW......................................................................................12

        2.      Detective McLaughlin ................................................................13

        3.      Sergeant Wren............................................................................13

        4.      Detective Soto ............................................................................13

5.      Agent Thurman ..................................................................................14

6.      Agent Greeley ....................................................................................14

B.    Applicable Law ............................................................................................14

C.    Discussion ....................................................................................................16

1.      This Court Should Preclude Cross-Examination About Conduct Underlying Settled Lawsuits and Unsubstantiated Allegations Against Detective McLaughlin, Sergeant Wren, Detective Soto, and Agent Greeley ...................................................................................16

2.      Substantiated Allegations Against Agent Thurman....................................17

3.      Agent Greeley's Arrest and Conviction for Trespassing..........................18

4.      The CW's Prior Uncharged Offenses ........................................................18

V.    This Court Can Readily Dispose of Mercedes's Motion *in Limine* .................................19

VI.   Conclusion .............................................................................................................20

## I.      Preliminary Statement

The Government respectfully moves *in limine* in advance of the upcoming trial of defendant Leibys Mercedes, a/k/a "Celly," for rulings to confirm the Government's proposed admission of evidence on a range of issues[1] and to preclude cross-examination of five expected Government witnesses. The Government also opposes Mercedes's motion *in limine* to preclude the Government's exhibits.

The Government also respectfully moves to preclude cross-examination of: (1) the CW regarding the CW's prior criminal activity unrelated to untruthfulness; and (2) five potential law enforcement witnesses regarding allegations by their employing agencies and certain lawsuits in which they are named.

Finally, the Government respectfully responds to Mercedes' objections to the Government Exhibits.

## II.     Background

Indictment S2 17 Cr. 419 (KMK) (the "Indictment") charges that, from at least in or about January 2017 up to and including in or about July 2017, the defendant, Leibys Mercedes, a/k/a "Celly," participated in a conspiracy to distribute and to possess with the intent to distribute one hundred grams and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 846. Mercedes and two co-conspirators—Christopher Coleman and Jonathan Acquino—were on federal supervised release for prior federal criminal offenses at the time of the charged conspiracy. Mercedes is scheduled to go to trial on October 22, 2018.

---

[1] These issues had been largely resolved before the previously scheduled trial by stipulations in principle. Mercedes, through new counsel, has declined to enter into stipulations that would obviate the need for the Court to rule on these issues.

**III.     The Court Should Allow Certain Evidence to Be Offered at Trial**

The Government respectfully moves the Court to rule that:

(1)     the Government may authenticate wiretap recordings through a single summary witness;

(2)     a cooperating witness (the "CW") may testify about statements made by other members of the charged conspiracy about the defendant's role in the conspiracy; and

(3)     the Government may offer testimony and records from two U.S. Probation Officers regarding telephone numbers provided by two of Mercedes's co-conspirators.

**A.     Relevant Facts**

The Government will establish at trial that Mercedes supplied heroin to Coleman, which Coleman in turn packaged and resold to other dealers—including Acquino—for re-distribution. The Government will prove the existence of, and Mercedes's participation in, the conspiracy through, among other things, witness testimony, phone records (including cell-site data and maps), intercepted communications, and physical evidence recovered in connection with the arrests of Coleman, Acquino, and Mercedes.

**1.     Acquino and Coleman Wires**

In 2017, the Government received court authorization to intercept communications (the "Acquino Wires" and the "Coleman Wires") on two cellular phones: respectively, one with a telephone number ending in 4803 (the "4803 Number"), which Acquino used (the "Acquino Wires"); and one with a telephone number ending in 1208 (the "1208 Number"), which Coleman used (the "Coleman Wires"). DEA Special Agent Edward Maher was involved in obtaining and monitoring the Acquino and Coleman wires; indeed, he was the affiant on one of the wiretap applications.

2

### a.   Identification of Acquino and Coleman on the Acquino and Coleman Wires

While the DEA was intercepting communications on the Acquino and Coleman wires, Coleman used at least two telephone numbers: the 1208 Number and a telephone number ending in 8384 (the "8384 Number"). In order to prove this, the Government expects to call U.S. Probation Officer Jeffrey Steimel, who supervised Coleman from January 2017 through July 2017.[2] The Government expects that Officer Steimel will testify that Coleman was required to, and did, give the Probation Office a contact number, and Coleman gave the 8384 Number, which Officer Steimel documented contemporaneously. The Government also expects Officer Steimel to testify that he successfully contacted Coleman by calling the 8384 Number. The Government also expects Officer Steimel to testify that, in or around March 2017, Coleman told Officer Steimel that his new phone number was the 1208 Number; which Officer Steimel documented contemporaneously. Again, the Government expects Officer Steimel to testify that he successfully contacted Coleman by calling the 1208 Number.

The Government expects to prove that Acquino used a telephone number ending in 0946 (the "0946 Number")—which was intercepted on the Coleman Wires—by, among things, calling U.S. Probation Officer Anthony Macchia, who supervised Acquino from January 2017 through July 2017.[3] The Government expects that Officer Macchia will testify that Acquino was required to, and did, give the Probation Office a contact number, and Acquino gave the 0946 Number,

---

[2] Additionally, as described below, a phone assigned the 1208 Number was found during a search of Coleman's apartment.

[3] Additionally, as described below, a phone assigned the 0946 Number was found during a search of Acquino's apartment.

which Officer Macchia documented contemporaneously. The Government also expects Officer Macchia to testify that he successfully contacted Coleman by calling the 0946 Number.[4]

### b.    Identification of "Celly" as Mercedes

The Government expects to prove that Mercedes—referred to on the intercepted calls as "Celly"—was intercepted over the Coleman Wires. The Coleman Wires intercepted Mercedes, who Coleman called "Celly," and Mercedes's brother, who Coleman called "Celly brother." However, neither Mercedes, Mercedes's brother, nor Coleman use Mercedes's name; accordingly, the Government will prove that "Celly" is Mercedes. From that, the Government expects further to prove that Mercedes called Coleman using at least two phone numbers, one ending in 3710 (the "3710 Number"), and discussed heroin that Mercedes had supplied to Coleman and money that Coleman owed to Mercedes for heroin.

One way the Government will prove that "Celly" is Mercedes is to establish that detailed descriptions by "Celly brother" on May 14, 2017 (Session 2212 of the Coleman Wires)[5] about "Celly"—in particular, that "Celly" "got violated" because of a "burner" and that, as a result, the police "kept the white car," that "Celly" was then accused of assaulting and stabbing a man and, as a result, was sent to "Essex County" by his probation officer—match events in Mercedes's life. In particular, this description is consistent with the facts that: (1) on March 1, 2017, the NYPD arrested Mercedes for unlawfully possessing a firearm in a white sedan (the "Gun Arrest"); (2) on

---

[4] The Government has not yet checked to see if Acquino also gave Macchia the 4803 Number as a contact number. If he did, the Government expects it would submit similar evidence to that discussed above about the 0946 Number.

[5] The statements of "Celly brother" are admissible as statements of a co-conspirator in furtherance of a conspiracy, pursuant to Federal Rule of Evidence 801(d)(2)(E).

April 19, 2017, the NYPD arrested Mercedes for stabbing a man (the "Assault Arrest"); and (3) on May 10, 2017, as a result of the Gun Arrest, Mercedes was arrested for violating the terms of his federal supervised release (the "Federal Arrest"), and was detained in the District of New Jersey until May 15, 2017, when he was granted bail.[6]

The Government expects to prove the Gun Arrest by calling at least one witness and submitting a civil complaint Mercedes filed in this court. Specifically, the Government intends to call NYPD Sergeant Michael Wren, who the Government expects will testify that he participated in the Gun Arrest. The Government also intends to offer a civil complaint that Mercedes filed against the City of New York and the NYPD officers who arrested him, in which Mercedes states: "On March 1, 2017 … I was seized … I was then put in the back of a Ford and taken to the 43rd Precinct … I was charged with possession of a firearm." *Mercedes v. City of New York, et al.*, 18 Civ. 4523 (S.D.N.Y.), Docket Entry 1.

The Government expects to prove the Assault Arrest by calling at least one witness and submitting a civil complaint Mercedes filed in this court. Specifically, the Government intends to call NYPD Detective John Soto, who the Government Government expects will testify that he participated in the Assault Arrest. The Government also intends to offer a civil complaint filed by Mercedes against the City of New York and the NYPD officers who arrested him, in which Mercedes states: "On April 19, 2017, I was arrested by the NYPD." *Id.*

---

[6] These facts are discussed in greater detail in the Government's 404(b) motion. (Docket Entry 111).

5

2.    **Arrests of Acquino, Coleman, and Mercedes**

On July 6, 2017, law enforcement officers arrested Acquino, Coleman, and Mercedes. Officers, including City of Yonkers Detective Robert McLaughlin, executed a search warrant Acquino's where they found Acquino, heroin, drug paraphernalia, and a telephone assigned the 0946 Number. Other law enforcement officers, including Agent Maher, executed a search warrant of Coleman's apartment, where they found Coleman, more than one hundred grams of heroin, and a telephone assigned the 1208 Number. Another law enforcement team, including DEA Special Agents Anthony Furman and Drew Greeley, arrested Mercedes at an apartment in the Bronx. With Mercedes's consent, Agent Thurman and others searched a car outside Mercedes's apartment that Mercedes said he sometimes drove, and found cellular phone assigned the 3710 Number.

3.    **Testimony of a Cooperating Witness**

The Government also expects to call a cooperating witness (the "CW") to testify about statements Coleman made about Mercedes's involvement in the conspiracy, including that Mercedes supplied Coleman with heroin. The Government also expects the CW to testify that, between about January 2017 and July 2017:

(1)    the CW helped Christopher Coleman distribute heroin;

(2)    the CW saw Coleman prepare and package heroin;

(3)    Coleman asked the CW to go with Coleman to the Bronx to get heroin from "Celly," who was one of Coleman's suppliers;

(4)    the CW did, in fact, drive with with Coleman to the Bronx to get heroin from "Celly";

(5)    although the CW did not personally meet with "Celly" in the Bronx, after Coleman did so, Coleman told the CW that "Celly" had just given heroin to Coleman; and

6

    (6)    another time, Coleman introduced the CW to Mercedes, introducing him as "Celly," his heroin supplier.

**B.**    **Applicable Law**

    1.    **Wire Authentication**

The Government can "authenticate wiretap recordings through a single summary witness rather than through the individual agents and translators who monitored each individual wiretap recording at the time the relevant conversations were intercepted." *United States v. Bosch*, 399 F. Supp. 2d 521, 522 (S.D.N.Y. 2005). In order to do so, the testifying agent must "produce clear and convincing evidence of authenticity and accuracy." *Id.* (citing *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977) and *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001)).

    2.    **Co-Conspirator Testimony**

The Federal Rules of Evidence exclude from the definition of hearsay "statement[s] by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit a statement under Rule 801(d)(2)(E), the district court must find by a preponderance of the evidence "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012).

To admit a statement under the co-conspirator exception to the hearsay rule, "[t]he conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment" or that is the subject of the relevant trial. *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). When determining whether the predicate conspiracy has been established, "the district court may consider the hearsay statement itself" as evidence of "the

7

existence of a conspiracy." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily v. United States*, 483 U.S. 171, 181 (1987)).

To be in furtherance of a conspiracy, the statement must in some way have been designed to promote or facilitate achievement of a goal of the ongoing conspiracy. Thus, statements are in furtherance of the conspiracy if they: (1) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener … to respond in a way that promotes or facilitates the carrying out of a criminal activity," *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990); (3) "seek to induce a co-conspirator's assistance," *United States v. Desena*, 260 F.3d at 158 (internal quotations omitted); (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a coconspirator of "the identity and activities of his coconspirators," *United States* v. *Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989). A narrative description of a past event is admissible as long as it serves "some current purpose in the conspiracy." *United States v. Thai*, 29 F.3d at 813.

Because a criminal conspiracy "cannot function properly unless its members and persons who do business with it understand its membership, leadership and structure," *United States v. Russo*, 302 F.3d 37, 46 (2d Cir. 2002), one of the "objectives that members of a criminal organization share as co-conspirators is the transmission of information regarding the organization's membership." *Id.* at 47. Accordingly, statements in which coconspirators are "giving associated persons information about its membership" are in furtherance of the conspiracy and permissible under Rule 801(d)(2)(E). *Id.* at 46.

3.     **Probation Records**

Federal Rule of Evidence 803(6), commonly known as the "business records" exception, permits admission of records made and kept as part of the "regular practice" of a "business, organization, occupation, or calling, whether or not for profit" if the record was made by "or from information transmitted by—someone with knowledge." Fed. R. Evid. 803(6)(A)–(C). If a business possesses a record, but had not prepared that record itself, a custodian from the business can testify to authenticate and admit the business record "if witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations." *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992).

Additionally, Probation Office records about a supervisee's telephone number are admissible under Federal Rule of Evidence 807 (the residual hearsay exception), because statements by a supervisee to his probation officer with their contact information bear "markers of reliability," even when no probation official ever actually contacted the supervisee using the contact information. *See United States v. Moore*, 824 F.3d 620, 623–24 (7th Cir. 2016).[7]

Finally, the Federal Rules of Evidence permit the admission of past recollection recorded, although it may only be read into evidence:

> A record that:
>
> (A)     is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;

---

[7] By this motion, the Government gives notice of its intent to offer the Probation Office records regarding the phone numbers provided by Coleman and Acquino, as described above. The declarants are Coleman and Acquino, who are each incarcerated. They can be reached through their attorneys, who are listed on the docket of this case. *See* Fed. R. Evid. 807(b).

      (B)     was made or adopted by the witness when the matter was fresh in the witness's memory; and

      (C)     accurately reflects the witness's knowledge.

If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party.

Fed. R. Evid. 803(5).

### C. Discussion

#### 1. Wire Authentication

The Court should admit the wiretap recordings once Agent Maher has produced clear and convincing evidence of authenticity and accuracy. *See Bosch*, 399 F. Supp. 2d at 522 (citing *Fuentes*, 563 F.2d at 532 and *Tropeano*, 252 F.3d at 661). The Government expects Agent Maher to describe: what a wiretap is under Title III; the numbers subject to the orders of interception; and some of the technical details regarding how, precisely, the Acquino and Coleman Wires were monitored, recorded, and maintained. After such testimony, the Government expects to offer the Acquino and Coleman Wires.

#### 2. Co-Conspirator Testimony

The Court should admit the co-conspirator statements described above. Among others, the Government expects to offer:

(1)     Coleman's statements to the CW about "Celly," his heroin distributor, his prior dealings with "Celly," and his heroin-distribution business;

(2)     Mercedes's brother's statements to Coleman about Mercedes, including explaining Mercedes's recent legal problems, which help explain why Mercedes's brother, rather than Mercedes himself, was speaking to and working with Coleman at the time; and

(3)     Coleman's, Acquino's, Mercedes's brother's, and other co-conspirators' statements intercepted on the Coleman and

10

> Acquino Wires in which they discussed the possession and
> distribution of heroin and movement of money, as well as
> the location and availability of various co-conspirators to
> engage in such distribution.

The evidence of the existence of the conspiracy will be legion, and will include the statements of the co-conspirators. Among other things, Mercedes discusses the conspiracy on the phone, as does his brother, and the CW will establish that one of the heroin suppliers to the conspiracy is "Celly," who the CW discovered was Mercedes. The information about the conspiracy is self-evidently admissible, as is the information about membership in that conspiracy. *See Russo*, 302 F.3d at 46.

### 3.    Probation Records

Officers Steimel and Macchia will testify that Acquino and Coleman provided them certain phone numbers as contact numbers, and that they successfully contacted Acquino and Coleman by using those phone numbers. In doing so, Officers Steimel and Macchia will describe a basic overview of federal supervised release, the need for ongoing contact with supervisees, and the systems by which the Probation Office maintain records regarding interactions with supervisees. The Probation Office's records are admissible as business records, because Officers Steimel and Macchia will testify that they were made and kept as part of the "regular practice" of a "business, organization, occupation, or calling, whether or not for profit" if the record was made by "or from information transmitted by—someone with knowledge." Fed. R. Evid. 803(6)(A)–(C). In the alternative, Officers Steimel and Macchia can read those records into evidence as past recollection recorded. Fed. R. Evid. 803(5).

Acquino's and Coleman's statements to their respective Probation Officers, in turn, are admissible under the residual hearsay exception. *See Moore*, 824 F.3d at 623–24 (admitting

11

statements of federal supervisees to their Probation Officers about their contact information under the residual hearsay exception). Indeed, one of the markers of reliability to which the *Moore* court pointed was the fact that a law enforcement official ultimately did contact one of the individuals through a phone number that he had provided.  *Id.* at 623. Here, similarly, Officers Steimel and Macchia will testify that they successfully contacted Coleman and Acquino at numbers that they provided.

In the alternative, Acquino's and Coleman's statements providing their contact phone numbers can be offered not for the truth of the matter asserted, but in order to explain why Officers Steimel and Macchia contacted them at those numbers, and that successful contact will establish that the numbers did, in fact, belong to Acquino and Coleman.

## IV.   The Court Should Preclude Mercedes From Engaging in Certain Lines of Cross-Examination

The Court should preclude cross-examination as to the CW, Detective McLaughlin, Sergeant Wren, Detective Soto, and Agents Thurman and Greeley about various issues, unrelated to this case, that do not affect their credibility.

### A.   Relevant Facts

#### 1.   The CW

As described above, the Government expects to call the CW to testify about the CW's interactions with Coleman and Mercedes, among other members of the conspiracy. The CW has engaged in certain crimes that are unrelated to this case and upon which cross-examination should be precluded: (1) participating in marijuana sales in and before 2005; (2) using marijuana and cocaine; and (3) shoplifting.

12

2.      **Detective McLaughlin**

The Government expects that Detective McLaughlin will testify at Mercedes's trial about, among other things, the execution of a search warrant at Acquino's apartment, which recovered heroin and drug paraphernalia, as well as his participation in controlled purchases of narcotics from Acquino.

The Government seeks a pretrial ruling precluding cross-examination about two issues:

> (1)     In 2010, a civil lawsuit was filed against the City of Yonkers and various members of the Yonkers Police Department, including Detective McLaughlin, alleging the use of excessive force during an arrest on assault charges. The case was settled without a finding or admission of liability by the City of Yonkers or any of the named defendants, including Detective McLaughlin.

> (2)     Civilians made administrative claims against Detective McLaughlin through the Yonkers Police Department, which were found to be unsubstantiated.

3.      **Sergeant Wren**

The Government expects that Sergeant Wren will testify that he participated in the arrest of Mercedes on March 1, 2017, for unlawfully possessing a firearm. The Government seeks a pretrial ruling precluding cross-examination about a civilian claim made to the NYPD's Civilian Complaint Review Board ("CCRB"), which was found to be unsubstantiated.

4.      **Detective Soto**

The Government expects that Detective Soto will testify that he participated in the arrest of Mercedes on April 19, 2017, for stabbing a man. The Government seeks to preclude cross-examination about two issues:

> (1)     In 2013, a lawsuit was filed in this District against the City of New York, the NYPD, and members of the NYPD, including Detective Soto, alleging the use of excessive force,

13

false arrest, and assault and battery during and arrest on assault and resisting-arrest charges. The case was settled without a finding or admission of liability by the City of New York, the NYPD, or any of the named defendants, including Detective Soto.

(2)     Civilians made claims made to the CCRB, which were found to be unsubstantiated

### 5.     **Agent Thurman**

The Government expects that Agent Thurman will testify that he participated in Mercedes's arrest and the subsequent search of Mercedes's apartment on July 6, 2017. The Government seeks to preclude cross-examination about internal DEA disciplinary proceedings that resulted in disciplinary penalties against Agent Thurman, alleging that Agent Thurman: (1) improperly filled out a medical form; and (2) used a cellphone at an inappropriate time.

### 6.     **Agent Greeley**

The Government expects that Agent Greeley will testify that he participated in Mercedes's arrest and the subsequent search of Mercedes's apartment on July 6, 2017. The Government seeks to preclude cross-examination about two issues

(1)     when Agent Greeley was a police officer with the Town of Manlius, the Town claimed that he had acted improperly with computer systems; that claim was found to  be unsubstantiated;

(2)     when he was a teenager, Agent Greeley was arrested for trespassing and was sentenced to a conditional discharge.

### B.     **Applicable Law**

The Federal Rules of Evidence limit the circumstances under which evidence of specific acts of a witness may be introduced into evidence. Federal Rule of Evidence 608(b) provides that, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove

14

specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." The Court "may, on cross-examination, allow [those prior acts] to be inquired into," but only if such acts "are probative of the character for truthfulness or untruthfulness of … the witness." Fed. R. Evid. 608(b)(1).

Any such cross-examination also must satisfy Rule 403—that is, specific instances of a witness's prior conduct may be inquired into on cross-examination only if the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed. R. Evid. 403. In this context, evidence is unfairly prejudicial if it would invite the jury to decide an issue material to the outcome of the case for reasons that have nothing to do with the factual issues properly before the jury. *See United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993).

Furthermore, Rule 611 provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility," and that the Court should "avoid wasting time" and "protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611. "It is settled that the scope and extent of cross-examination lies within the discretion of the trial judge." *United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990) (citation omitted). The Supreme Court has explained that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination [of a prosecution witness] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "A trial judge does not abuse his [or her] discretion by curtailing cross-examination as long as the jury has 'sufficient

information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government.'" *Scarpa*, 913 F.2d at 1018 (quoting *United States v. Singh*, 628 F.2d 758, 763 (2d Cir. 1980)).

### C. Discussion

1. **This Court Should Preclude Cross-Examination About Conduct Underlying Settled Lawsuits and Unsubstantiated Allegations Against Detective McLaughlin, Sergeant Wren, Detective Soto, and Agent Greeley**

The allegations in the civil lawsuits against Detectives McLaughlin and Soto and the unsubstantiated administrative complaints against Detective McLaughlin, Sergeant Wren, Detective Soto, and Agent Greely are wholly unrelated to this case and do not concern any officer's character for truthfulness. *See Saldarriaga v. United States*, No. 99 Civ. 4487 (WK), 2002 WL 449651, at *4 (S.D.N.Y. Mar. 21, 2002) ("Unsubstantiated civil rights allegations made against [the witness] would have no bearing on his 'character for truthfulness.' Any cross-examination regarding such allegations would have been irrelevant and improper under the Federal Rules of Evidence."); *United States v. Akefe*, 568 F. App'x 1, 8 (2d Cir. 2014) (preclusion of defense from cross-examining law enforcement officer regarding prior Office of Professional Responsibility investigation "was appropriate given that the allegations against [the agent] were wholly unrelated to the instant case and, in any event, found to be unsubstantiated"); *United States v. Lawes*, 292 F.3d 123, 131-32 (2d Cir. 2002) (affirming preclusion of cross-examination of police officer regarding CCRB finding that the officer had used excessive force in an unrelated incident, concluding that the "prior finding provides nothing of value with respect to [the officer's] motivation to lie" in the case at bar and would be a distraction to the jury); *United States v. Laster*, No. 06 Cr. 1064 (JFK), 2007 WL 2872678, at *2 (S.D.N.Y. Sept. 28, 2007) (precluding defense

16

from cross-examining police officer concerning allegations in CCRB complaint that officer failed to give proper medical attention to a suspect, finding that the allegations "do not bear on [the officer's] character for truthfulness").

Inquiry based on the lawsuits and civilian complaints[8] would also risk substantial unfair prejudice that outweighs any probative value of the evidence--of which there is none. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Because the lawsuits and civilian complaints cited above fail to suggest that these men were untruthful in any way and the allegations, if raised, would distract the jury from the relevant issues and harass and embarrass the witnesses, the Government requests that the Court preclude the defense from cross-examination on these matters at trial.

### 2.    Substantiated Allegations Against Agent Thurman

The Court should also preclude cross-examination of Agent Thurman about the substantiated allegations of his misconduct, which led to disciplinary action against him, because there is no evidence that Agent Thurman was disciplined for being untruthful. *Lawes*, 292 F.3d at 131-32 (affirming preclusion of cross-examination of police officer regarding substantiated CCRB on irrelevant matter).

---

[8] Needless to say, under no circumstances could Mercedes ask about the lawsuits or complaints themselves, as they would constitute rank hearsay.

### 3.    Agent Greeley's Arrest and Conviction for Trespassing

The Court should preclude cross-examination of Agent Greeley about his prior criminal conviction for trespassing, which does not meet the standard for admission under Rule 609(d). because, had Agent Thurman been convicted for trespassing as an adult, it would not "be admissible to attack the adult's credibility," and it is not "necessary to fairly determine guilt or innocence." Fed. R. Evid. 609(d)(3)–(4). Agent Greeley's prior trespassing conviction has nothing to do with his credibility, and if raised, would distract the jury.

### 4.    The CW's Prior Uncharged Offenses

Rule 608 bars the use of extrinsic evidence to prove specific instances of a witness' conduct, except for a criminal conviction or on cross-examination if probative of truthfulness. Fed. R. Evid. 608(b). But the CW was never convicted for sale of marijuana, possession of marijuana and cocaine, or shoplifting. None of these offenses are probative of the CW's truthfulness. The defendant should thus be precluded from cross-examining the CW regarding the CW's use of marijuana during the relevant period. *See, e.g.*, *United States v. Urena*, No. S5 11 CR. 1032 PAE, 2014 WL 1303114, at *3 (S.D.N.Y. Apr. 1, 2014) (precluding cross-examination of witness who was twice convicted of misdemeanor marijuana possession because "[t]he mere fact of engaging in such conduct, which by its nature is not inherently indicative of dishonesty, would not bear on [the witness'] credibility in this trial."). So, too, with the CW's prior shoplifting. *See*, *e.g.*, *United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990) ("shoplifting do[es] not involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2)"); *United States v. Entrekin*, 624 F.2d 597, 598–99 (5th Cir. 1980) (same); *United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982) (same); *but see United States v. Monaco*, 199 F.3d 1324 (Table), 1999 WL 980946, at *4 (2d Cir

1999) (summary order) (explaining that participation in a "shoplifting and fraud scheme" was "probative of [the witness's] character for truthfulness").

## V.  This Court Can Readily Dispose of Mercedes's Motion *in Limine*

Mercedes moved, *in* limine, to preclude nearly all of the Government's exhibits. (Docket Entry 124). Mercedes did not explain his argument with respect to *any* exhibit; rather, he asserted boilerplate objections to *nearly all* the Government's proposed exhibits on the basis of authenticity and/or relevance.

The relevance of the exhibits to which Mercedes has objected on relevance grounds will be clear at trial. For example, those exhibits, which Mercedes asserts are not relevant, include photos of heroin and other items recovered from the residences of co-conspirators (GX 1–7, 28–32); photographs of co-conspirators (GX 34); lab reports for heroin purchased from co-conspirators or found at their residences (GX 100–05); records relating to the phone numbers used by Mercedes and his co-conspirators and to their communications (GX 204–15); cell-site date and related documents pertaining to the locations of meetings involving Mercedes and/or his co-conspirators (GX 400–24); intercepted electronic and wire communications relating to the drug trafficking activities of Mercedes and his co-conspirators (GX 500–98, 600–12); physical evidence, such as drugs, currency, phones, and glassines, recovered from members of the conspiracy(GX 700–12); and records relating to Mercedes's identity as the heroin supplier to whom co-conspirators referred in certain intercepted communications (GX 806–07, 811–18). Mercedes has not even tried to explain his conclusory assertion that the Government's exhibits— almost across the board—are inadmissible under Rule 401.

Exhibits, of course, will be authenticated in the normal course of offering them at trial.

19

However, to the extent that Mercedes decides to raise any particular objections with respect to specific exhibits, the Government is prepared to discuss those issues with him and address any questions that the Court may have.

## VI.    Conclusion

For the foregoing reasons, the Government respectfully submits that the Court should grant the Government's motions *in limine*, and deny Mercedes's overly broad, conclusory, and speculative motion *in limine*.

Dated:  White Plains, New York
        October 5, 2018

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney for the
                                    Southern District of New York

                        By:    _____/s/_____
                                    Samuel L. Raymond
                                    Daniel Loss
                                    Michael D. Maimin
                                    Assistant United States Attorneys
                                    (914) 993-1900o