UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES

    -v.-

LEIBYS MERCEDES,
  a/k/a "Celly,"

            Defendant.

**S2 17 Cr. 419 (KMK)**

**Government's Sentencing Memorandum**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
300 Quarropas Street
White Plains, New York 11215

Samuel L. Raymond
Daniel M. Loss
Michael D. Maimin

Assistant United States Attorney
    *Of Counsel*

**Table of Contents**

I.    Background ............................................................................................................. 1

II.   Facts ...................................................................................................................... 1

      A.    Mercedes's Background............................................................................ 1

      B.    The Conduct Underlying Mercedes's Latest Offense of Conviction..................... 3

III.  Mercedes's Trial ................................................................................................. 5

IV.   Applicable Sentencing Guidelines ..................................................................... 6

      A.    Offense Level ........................................................................................... 6

      B.    Criminal History Category........................................................................ 7

      C.    Sentencing Guidelines Range .................................................................. 9

V.    Discussion ............................................................................................................ 9

      A.    The Nature and Seriousness of the Offense, and the Need to Provide Just
            Punishment............................................................................................. 10

      B.    The Need to Promote Respect for the Law and to Afford Adequate
            Deterrence ............................................................................................. 11

      C.    The History and Characteristics of the Defendant ................................. 12

      D.    The Need to Avoid Unwarranted Sentence Disparities ......................... 12

VI.   Conclusion ......................................................................................................... 13

## I.    Background

The Government respectfully submits this sentencing submission in connection with the sentencing of defendant Leibys Mercedes, scheduled for April 9, 2019 at 11:00 a.m.

Mercedes—who is a "career offender" not only by the Sentencing Guidelines' definition, but also by any layperson's understanding of that term—is a man for whom prison has only served as a repeated interludes between escalating acts of criminal conduct. Indeed, the conduct underlying his latest conviction occurred while Mercedes was serving his latest federal term of supervised release, in which Mercedes, who had already sustained two serious federal criminal narcotics convictions, went back to what he knows: distributing deadly narcotics, this time in Westchester and the Bronx. Mercedes has demonstrated through his actions over the years that he has no respect for the law, he has no respect for society, he has no respect for the courts, and he will not be deterred from crime. While this Court must consider many Section 3553(a) factors in sentencing Mercedes, ultimately, the most important factors are the need to punish someone who has repeatedly laughed at years and years of imprisonment, and to incapacitate someone who is indefatigable. A term of imprisonment within the Guidelines range of 262 to 327 months would be sufficient, but not greater than necessary, to accomplish these goals.

## II.    Facts

### A.    Mercedes's Background

Mercedes has been a serious criminal since he was a child. At the tender age of 14, Mercedes stabbed and slashed another, resulting in an arrest and conviction—as a juvenile delinquent—for aggravated assault. (PSR ¶ 42). While on release on that case—before it was adjudicated—he was caught stealing a car. (PSR ¶ 43). Nonetheless, the courts showed mercy to the then-15-year-old Mercedes, sentencing him to concurrent one-year terms of probation. (PSR ¶¶ 42–43). Forecasting a trend that would continue until this day, Mercedes—who had already

started committing new crimes while under charges for another crime—took approximately two months before he was caught stealing another car. (PSR ¶ 44). The courts were still lenient, resentencing Mercedes to a longer term of probation and a suspended sentence of imprisonment. (PSR ¶¶ 42–43). Mercedes still did not care; he stole another car and avoided law enforcement. (PSR ¶¶ 45–46). And then it somehow got worse. Mercedes stole yet another car; this time, while fleeing the police, he tried to run one over. (PSR ¶¶ 47). Finally, Mercedes had demonstrated that, despite his youth, he needed discipline. He was sentenced to a series of concurrent, indeterminate sentences of imprisonment, not to exceed three years. (PSR ¶¶ 42–47).

One might think that Mercedes had simply committed the indiscretions of youth. That he had learned his lessons the hard way, and reformed. Mercedes determined to prove otherwise. In February 2002—less than three years after he was released to state parole and just over one year after that parole term expired—Mercedes sold hundreds of grams of heroin to an undercover officer, carrying a .380 semiautomatic pistol in his car while doing so. (PSR ¶ 49).[1] Mercedes pleaded guilty, in the District of New Jersey, to participating in a conspiracy to distribute and possess with intent to distribute 100 grams and more of heroin, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. (PSR ¶ 49). Mercedes was sentenced to 48 months' imprisonment, to be followed by four years' supervised release. (PSR ¶ 49). He was released to supervision on October 25, 2005. (PSR ¶ 49). He again did not do well, sustaining arrests for assault and possession of a weapon in May 2006 and narcotics/weapon possession in January 2008. (PSR ¶ 49).

---

[1] Less than a year before, Mercedes had been a passenger in a car in which a clear plastic bag containing 12 wraps of cocaine were found. (PSR ¶ 57). Mercedes had $595 on him at the time. (PSR ¶ 57).

Then, no later than February 2008—just over two years after his release from his prior federal conviction—Mercedes and others were moving multi-kilogram shipments of cocaine from Mexico and California to Elizabeth, New Jersey in a refrigerated tractor trailer with a concealed compartment. (PSR ¶ 50). Mercedes was paid $2,000 per load. (PSR ¶ 50). But the real money was in selling the drugs; accordingly, Mercedes and a co-defendant would distribute kilogram-quantities of cocaine to their own customers. (PSR ¶ 50). By way of example, at one time, Mercedes took 19 kilograms—paying $322,000—and profiting $21,000 from their sale (even though he had to return five kilograms that he could not sell). (PSR ¶ 50). Mercedes pleaded guilty, in the District of New Jersey, to participating in a conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. (PSR ¶ 50). Mercedes was sentenced to 87 months' imprisonment, to be followed by five years' supervised release.[2] (PSR ¶ 50). He was also sentenced to 33 months' imprisonment for his violation of the conditions of the term of supervised release imposed for his prior federal conviction. (PSR ¶ 49).

### B.    The Conduct Underlying Mercedes's Latest Offense of Conviction

In November 2015, Mercedes was awaiting release at a federal halfway house in the Bronx. Anticipating his release, Mercedes began preparing to re-enter his avocation of choice: narcotics distribution. First, in October and November 2015, he met, was housed with, and befriended his future co-conspirator, Christopher Coleman. (Tr. 66–70; GX 818A–B). Second, in November

---

[2] In each of his prior federal cases, Mercedes was sentenced below the applicable statutory minimum, in spite of the fact that he was apparently not safety-valve eligible. The government does not know why this happened.

2015, he contacted a law enforcement agent—who was working undercover at the time—to arrange to purchase kilograms of heroin.[3] (Mercedes never completed that purchase). In January 2016, Mercedes was released to his latest term of supervised release. (PSR ¶ 50).

After Coleman was released from the halfway house, he began distributing weight-quantities of heroin. (Tr. 69–70, 131, 133–34, 161–62). Mercedes was Coleman's supplier—his "Bronx plug." (Tr. 130–131, 169–175). At least three times, Coleman drove to the Bronx to purchase between $8,000 and $10,000 of heroin—between about 123 grams and 153 grams each time—from Mercedes, bringing his girlfriend, Lisa Henderson, with him. (Tr. 173–74). Indeed, at one point, Coleman had trouble getting in contact with Mercedes—he believed that Mercedes "got into a domestic dispute with a girlfriend and that he was arrested" (Tr. 174) —and arranged to get his heroin from a Newburgh supplier who Coleman called "O." (Tr. 174–77). However, "O" gave Coleman a "bad batch," and Coleman went back to Mercedes. (Tr. 177).

In May through July 2017—as verified by intercepted calls and text messages, as well as cell-site and GPS data—Coleman and Mercedes arranged to meet at least four times. (Tr. 325–26; GX 430, 517–18, 520–21, 524–25, 559, 562 604–05). In the early morning of July 6, 2017—less than three days after Mercedes supplied Coleman with his latest batch of heroin, law enforcement officers arrested Coleman and Mercedes in their respective apartments. (Tr. 228–29, 261–71). In

---

[3] On or about November 17, 2015—while Mercedes was living at, but permitted to leave, the halfway house—he met with an undercover law enforcement agent, seeking to arrange the purchase of kilogram quantities of heroin. Law enforcement agents photographed the meeting, and identified Mercedes by comparing the surveillance photographs to Mercedes's booking photographs. Additionally law enforcement had been provided with two phone numbers for the potential buyer: one was a phone number that Mercedes later provided to his United States Probation Officer and also subscribed to in the name of Mercedes's mother.

Coleman's apartment, they found, among other things, approximately 208 grams of heroin and narcotics paraphernalia (Tr. 261–263, 265–268, 271, 285–286, GX 706, 708–10, 713). At $65 per gram,[4] that was $13,520 worth of heroin.

As one would suspect from a life-long, weight drug-dealer, Mercedes's apartment was fortified, with a large, opaque iron fence, security cameras, and two security doors. (Tr. 222–24; GX 35–43). Law enforcement eventually breached all the doors and entered, finding Mercedes at the back of a hallway by a stairwell. (Tr. 225–26). Mercedes consented to a search of his apartment, which did not include the area up the stairs from which he came when he was found. (Tr. 228, 231–32). While agents did not find any drugs in Mercedes's apartment—presumably, he would not have consented had they sought to search the area up the stairs or wherever else they would have found drugs—they did find $13,530 in cash in his jacket pocket in the closet, corresponding to the heroin they found in Coleman's apartment. (Tr. 229–32; GX 10, 219).

## III.  Mercedes's Trial

Mercedes exercised his right to trial. The Court and the jury heard overwhelming evidence of Mercedes's guilt. On November 7, 2018, the jury convicted Mercedes of the sole count of the superseding indictment: participating in a conspiracy to violate the narcotics laws of the United States—in particular, to distribute and possess with intent to distribute 100 grams and more of heroin, in violation of 21 U.S.C. § 841(b)(1)(B)—in violation of 21 U.S.C. § 846, and made a special finding that the conspiracy involved 100 grams or more of heroin, which triggered the enhanced sentencing provisions in 21 U.S.C. § 841(b)(1)(B).

---

[4] "In Yonkers, for loose, raw heroin, a gram would probably be around $65." (Tr. 51).

All of Mercedes' co-conspirators pleaded guilty. On or about July 20, 2018, Christopher Coleman was sentenced to 144 months' imprisonment for the narcotics conspiracy and an additional firearms charge; the Court ordered that his 24 months' sentence on his violation of supervised release run concurrently to the 144 months. On or about September 12, 2018, Jonathan Aquino was sentenced to 60 months' imprisonment for the narcotics conspiracy, and 12 months' for his violation of supervised release to run consecutive. On November 13, 2018, Branden Jones was sentenced to 72 months' imprisonment for the narcotics conspiracy; the Court ordered that his sentence on his violation of supervised release run concurrently to the 72 months. On March 18, 2019, James Odell Whitted was sentenced to 63 months' imprisonment, with 12 months' for his violation of supervised release to run consecutive.

Mercedes's sentencing is now scheduled for April 9, 2019 at 11:00 a.m.

## IV.    Applicable Sentencing Guidelines

### A.    Offense Level

1.    Pursuant to U.S.S.G. § 1B1.11(a), the Court should use the Sentencing Guidelines manual in place as of November 2018.

2.    Because Mercedes's offense involved at least 400 grams but less than 700 grams of heroin,[5] pursuant to U.S.S.G. § 2D1.1(a)(5) & (c)(7), the base offense level is 26. (PSR ¶ 32).

3.    Pursuant to U.S.S.G. § 4B1.1(a), Mercedes is a Career Offender because: (1) he was at least 18 years old at the time of the instant offense of conviction; (2) the instant offense of conviction is a controlled substance offense; and (3) he has at least two prior felony convictions of controlled substance offenses, to wit, his prior federal felony narcotics conspiracy

---

[5] It is highly unlikely that Mercedes's offense only involved those transactions intercepted on relatively brief wiretaps between Mercedes and one of his customers and those transactions on which Mercedes's girlfriend happened to accompany him. However, the Government did not provide evidence of further transactions, and so does not ask for them to be included in the Guidelines calculations.

convictions. Pursuant to U.S.S.G. § 4B1.1(b)(2), because the statutory maximum term of imprisonment for the instant offense is 25 years or more, the offense level is 34. (PSR ¶ 38).[6]

4.    In accordance with the above, the applicable offense level is 34. (PSR ¶ 40).

**B.    Criminal History Category**

Based upon the information set forth in his PSR, Mercedes has 8 criminal history points. However, because, as described below, Mercedes is a Career Offender, he is in Criminal History Category VI.

1.    On or about July 1, 1996, Mercedes was adjudicated a juvenile delinquent and sentenced to one year's probation for his conviction for aggravated assault, in Family Court in Union County, New Jersey. On or about September 13, 1996, Mercedes was resentenced, due to a violation of probation, to three years' probation and two years' imprisonment (which term was suspended). On or about July 18, 1997, Mercedes was again resentenced due to a violation of probation, this time to an indeterminate term not to exceed six months. Pursuant to U.S.S.G. § 4A1.2(d)(2)(A)&(e), this conviction results in no criminal history points. (PSR ¶ 42).

2.    On or about July 1, 1996, Mercedes was adjudicated a juvenile delinquent and sentenced to one year's probation for his conviction for receiving stolen property, in Family Court in Union County, New Jersey. On or about September 13, 1996, Mercedes was resentenced, due to a violation of probation, to three years' probation and two years' imprisonment (which term was suspended). On or about July 18, 1997, Mercedes was again resentenced due to a violation of probation, this time to an indeterminate term not to exceed six months. Pursuant to U.S.S.G. § 4A1.2(d)(2)(A)&(e), this conviction results in no criminal history points. (PSR ¶ 43).

3.    On or about July 18, 1997, Mercedes was sentenced to up to an indeterminate term not to exceed one year's imprisonment for his conviction for receiving stolen property, in Family Court in Union County,

---

[6] Mercedes put the Government to its burden of proof at trial, and therefore does not qualify for an adjustment for acceptance of responsibility under either U.S.S.G. §§ 3E1.1 or 4B1.1(b). *See*, *e.g.*, U.S.S.G. § 3E1.1, comment. (n.2) ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt ….."). (PSR ¶ 39).

New Jersey. Pursuant to U.S.S.G. § 4A1.2(d)(2)(A)&(e), this conviction results in no criminal history points. (PSR ¶ 44).

4. On or about July 18, 1997, Mercedes was sentenced to up to an indeterminate term not to exceed one year's imprisonment for his conviction for eluding law enforcement, in Family Court in Union County, New Jersey. Pursuant to U.S.S.G. § 4A1.2(d)(2)(A)&(e), this conviction results in no criminal history points. (PSR ¶ 45).

5. On or about July 18, 1997, Mercedes was sentenced to up to an indeterminate term not to exceed one year's imprisonment for his conviction for receiving stolen property, in Family Court in Union County, New Jersey. Pursuant to U.S.S.G. § 4A1.2(d)(2)(A)&(e), this conviction results in no criminal history points. (PSR ¶ 46).

6. On or about July 18, 1997, Mercedes was sentenced to concurrent indeterminate terms not to exceed, respectively, three years', two years', two years' and six months' imprisonment for his convictions for receiving stolen property (two counts), eluding, and aggravated assault, in Family Court in Union County, New Jersey. Pursuant to U.S.S.G. § 4A1.2(d)(2)(A)&(e), this conviction results in no criminal history points. (PSR ¶ 47).

7. On or about October 16, 2000, Mercedes was sentenced to a $98 fine for his conviction for loitering in Municipal Court in Elizabeth, New Jersey. Pursuant to U.S.S.G. § 4A1.2(e)(2)&(3), this conviction results in no criminal history points. (PSR ¶ 48).

8. On or about September 16, 2003, Mercedes was sentenced to 48 months' imprisonment for his conviction in the United States District Court for the District of New Jersey for conspiring to distribute and possess with the intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). Pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.2(e)(1), this conviction results in three criminal history points. (PSR ¶ 49).

9. On or about November 18, 2011, Mercedes was sentenced to 87 months' imprisonment for his conviction in the United States District Court for the District of New Jersey for conspiring to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.2(e)(1), this conviction results in three criminal history points. (PSR ¶ 50).

10. Pursuant to U.S.S.G. § 4A1.1(d), because Mercedes committed the instant offense while under a criminal justice sentence—to wit, the term of supervised release imposed as part of the sentence for the federal narcotics

conspiracy conviction described in paragraph 9, above, two criminal history points are added. (PSR ¶ 52).

11.     Pursuant to U.S.S.G. § 4B1.1(a), Mercedes is a Career Offender because: (1) he was at least 18 years old at the time of the instant offense of conviction; (2) the instant offense of conviction is a controlled substance offense; and (3) he has at least two prior felony convictions of controlled substance offenses, to wit, his prior federal felony narcotics conspiracy convictions. Pursuant to U.S.S.G. § 4B1.1(b), Mercedes's Criminal History Category is therefore VI. (PSR ¶ 54).

### C.     Sentencing Guidelines Range

At offense level 34 and Criminal History Category VI, Mercedes's advisory Sentencing Guidelines range is 262 to 327 month's imprisonment with a mandatory minimum of 60 months' imprisonment. (PSR ¶¶ 111–112). In addition, after determining Mercedes's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At offense level 34, the applicable fine range is $35,000 to $5,000,000.

## V.     Discussion

A sentence within the applicable Guidelines range—here, 262 to 327 months' imprisonment—would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.[7] While such a sentence would be high compared to the average defendant who appears before this Court, Mercedes is far from the average defendant. He is a recidivist who has shown no compunction, whatsoever, about returning to large-scale drug dealing, and who has not

---

[7] As this Court well knows, the Guidelines continue to provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). District courts must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which serves as "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). After determining the applicable Guidelines range, courts consider the seven factors set forth in 18 U.S.C. § 3553(a). *See Gall*, 552 U.S. at 50 & n.6. In determining the appropriate sentence, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set out in 18 U.S.C. § 3553(a)(2).

been deterred by multi-year terms of imprisonment, over and over. The Section 3553(a) factors most applicable in this case include the nature and circumstances of the offense of conviction, the seriousness of the offense, the need to provide just punishment, the need to promote respect for the law, the need to afford adequate deterrence to criminal conduct, and the history and characteristics of the defendant. None of these factors militates for Mercedes receiving a below-Guidelines sentence. Rather, at this point, Mercedes has committed a lifetime's worth of drug crimes; he should be punished accordingly.

### A.  The Nature and Seriousness of the Offense, and the Need to Provide Just Punishment

Mercedes supplied at least hundreds of grams of heroin to Christopher Coleman, so that Coleman and his web of dealers could resell Mercedes's deadly product on the streets of Westchester. But Mercedes did not just fall into the drug distribution business; he is an experienced drug dealer, who sold hundreds of grams to multiple kilograms of heroin and cocaine at a time over his life, and chose to do so once again. The degree of security that Mercedes put in place at his house demonstrates that, if he was not moving much larger quantities of heroin than that the Government discovered in its investigation—and he likely was—he was certainly preparing to do so.

The seriousness of Mercedes's crime is only exacerbated by the fact that he chose to sell heroin. As the Court knows all-too-well, this country is in the midst of an opioid crisis. Heroin is an extraordinarily dangerous and destructive drug, and the defendant, by choosing to supply heroin to dealers for resale, sought to, and did, profit from destruction in the community. Heroin use causes overdose deaths with tragic frequency—accounting for over 41 deaths *a day* in the United States alone—and has ballooned into an epidemic. *See* Center for Disease Control, "Heroin Overdose Data," *available at* www.cdc.gov/drugoverdose/data/heroin.html.

The nature and seriousness of Mercedes's offense make the need for just punishment more acute, and support the imposition of a Guidelines sentence of imprisonment.

### B.    The Need to Promote Respect for the Law and to Afford Adequate Deterrence

Through his non-stop criminal activity—starting in childhood and continuing to his latest arrest—and his willingness to do so, over and over, while on federal supervised release (and even while at a halfway house), Mercedes has demonstrated little but contempt for the law, and an utter aversion to deterrence.

Moreover, in light of the opioid crisis, the need for respect for the law and general deterrence is especially strong. The sentence imposed should send the strong message that heroin suppliers who profit off of such poison—and thus place people's lives at risk—will face severe consequences when they are caught. Deterrence is particularly important for suppliers like Mercedes, who conduct their drug dealing businesses from the comforts of their home and behind gated walls, without facing the risks and dangers inherent in dealing drugs on the streets. The imposition of any sentence below the Guidelines range would send a message at odds with the pressing need to deter the distribution of highly addictive and potentially lethal substances.

Specific deterrence is also essential here. Sanctions as high as 87 months' imprisonment have had absolutely no deterrent effect on Mercedes whatsoever. It was before the end of that sentence that Mercedes began fishing for heroin suppliers; shortly after that sentence ended, he must have found some, as he began redistributing heroin. In the case of someone as incorrigible as Mercedes, a longer sentence might achieve long-term specific deterrence, but, at the very least, it would incapacitate Mercedes. *See*, *e.g.*, *United States v. Valente*, 915 F.3d 916, 925 (2d Cir. 2019) (Lynch, J., concurring) (noting that the purposes of sentencing in Section 3553(a)(2) include "protecting the public from future crimes the defendant might commit (incapacitation)."). A Guidelines sentence—one that is well over 20 years—would at least incapacitate Mercedes.

11

## C.    The History and Characteristics of the Defendant

Simply put, there is nothing about Mercedes that militates for a below-Guidelines sentence. His life has been defined not by hard work or good deeds, but rather by criminal activity. Although he has two children who appear, by all accounts, to be doing well (PSR ¶ 76), Mercedes has not acted in a way to raise them right. Instead, for the lion's share of his adult life, Mercedes has been engaged in large-scale narcotics trafficking, or spent his time in prison for that large-scale narcotics trafficking. He has shown no remorse in this Court; to the contrary, he decided not to take responsibility for returning to the same life of crime he has known since he was 14 years old.

## D.    The Need to Avoid Unwarranted Sentence Disparities

Pursuant to 18 U.S.C. § 3553(a)(2), this Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As this Court is aware, Section 3553(a)(6) does not require this Court to compare Mercedes to his co-defendants at all. Rather, Section 3553(a)(6) requires a sentencing judge to consider only national disparities, not intra-case disparities. *United States v. Johnson*, 567 F.3d 40, 54 (2d Cir. 2009) ("a district court may—but is not required to—consider sentencing disparity among co-defendants under 18 U.S.C. § 3553(a)(6)"). This command to consider national disparities militates for a Guidelines sentence, absent extenuating circumstances, as it stands to reason that the factor of similar treatment of similarly situated defendants will most often be accomplished if judges follow the Guideline recommendations. *See*, *e.g.*, *United States v. Cavera*, 550 F.3d 180, 219 (2d Cir. 2008) ("one of the major purposes of the Guidelines was to eliminate unjustified disparities in sentences among similarly situated defendants …." (quoting *United States v. Stultz*, 356 F.3d 261, 266 (2d Cir. 2004))).

In any event, even if this Court were to consider Mercedes's co-defendants—as it is permitted to do, but need not do—there could be no unwarranted disparity between Mercedes's

12

sentence and those of his co-defendants because Mercedes, simply put, is not similarly situated to his co-defendants in at least two respects. First, unlike his co-defendants, Mercedes elected to dispute his guilt and go to trial rather than plead guilty and accept responsibility. As the Second Circuit has repeatedly made clear, defendants who plead guilty are not similarly situated to those who do not. *See*, *e.g.*, *United States v. Chervin*, 553 F. App'x 63, 64 (2d Cir. 2014) ("Chervin has not shown that he was similarly situated to his co-defendants for various reasons, including that he was the only defendant in this case to go to trial and he did not accept responsibility."); *United States v. Kasi*, 348 F. App'x 689, 692 (2d Cir. 2009) (holding that an appellant "and his co-defendants were not similarly situated [where the appellant] was the only defendant to plead not guilty and proceed to trial."). Second, unlike his co-defendants, Mercedes is a career offender (and appropriately so). *See*, *e.g.*, *United States v. Mongo*, 586 F. App'x 785, 789 (2d Cir. 2014) (explaining, in the case of a defendant sentenced as a career offender, that "his co-defendants [we]re not similarly situated to him in terms of their criminal history"); *United States v. Turner*, 291 F. App'x 438, 439 (2d Cir. 2008) (affirming district court's conclusion "that Turner was not similarly situated to [his co-defendants] because of his lengthy criminal history with three prior felony drug offenses—the aim of career-offender provision—and because Turner was not a drug addict, in contrast to some of his co-defendants.").

## VI.    Conclusion

For the reasons set forth above, this Court should sentence Mercedes to a term of imprisonment within the advisory Guidelines range of 262 to 327 months' imprisonment. Such a

sentence would be sufficient, but not greater than necessary, to accomplish the goals set forth in

18 U.S.C. § 3553(a).

Dated:  White Plains, New York
        April 4, 2019

                                            Respectfully submitted,

                                            GEOFFREY S. BERMAN
                                            United States Attorney for the
                                            Southern District of New York

By:                                    
                                            Samuel L. Raymond
                                            Daniel M. Loss
                                          Michael D. Maimin
                                          Assistant United States Attorneys
                                          Tel.: (914) 993-1946 / 1924 / 1952

14