UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES<br><br>-v.-<br><br>LEIBYS MERCEDES,<br>a/k/a "Celly,"<br><br>Defendant. | S2 17 Cr. 419 (KMK) |

**Government's Sentencing Memorandum**

|  |  |
|---|---|
|  | GEOFFREY S. BERMAN<br>United States Attorney for the<br>Southern District of New York<br>300 Quarropas Street<br>White Plains, New York 11215 |

Samuel L. Raymond
Daniel M. Loss
Michael D. Maimin

Assistant United States Attorneys
    *Of Counsel*

**Table of Contents**

I. Preliminary Statement ................................................................................................... 1

II. Discussion ........................................................................................................................ 2

    A. Mercedes's Offense of Conviction Involved at Least 400 Grams of Heroin ................................................................................................................ 2

    B. Mercedes Was Coleman's Primary Heroin Supplier for at least Many, Many Months ................................................................................................ 5

    C. Mercedes is Not a "Minor Participant," Much Less a "Minimal Participant," as Those Terms Are Defined in U.S.S.G. § 3B1.2(a) ................. 7

    D. There Is No Reason to Vary Below the Applicable Guidelines Range ................................................................................................................ 9

III. Conclusion ..................................................................................................................... 10

## I.   Preliminary Statement

The Government respectfully submits this reply sentencing submission in connection with the sentencing of defendant Leibys Mercedes, which is currently scheduled for May 6, 2019 at 2:00 p.m. This reply submission only responds—briefly—to certain arguments in Mercedes's sentencing memorandum ("Mercedes Br."), which was filed on April 20, 2019. (Docket Entry 170). In particular, Mercedes argues that:

> (1) "[t]he offense that the defendant was found guilty of involved at least more than 100 grams of heroin," rather than at least 400 grams of heroin, as the Probation Office and the Government argue (Mercedes Br. 2)[1];
>
> (2) Mercedes "became an alternative supplier of heroin to Coleman for a brief period of time not exceeding two months" (Mercedes Br. 3);
>
> (3) this Court should apply a minimal participant reduction to Mercedes's Sentencing Guidelines calculation (Mercedes Br. 3–4); and
>
> (4) this Court should "consider a sentence below the guideline as appropriate for the defendant under the circumstances" (Mercedes Br. 5).

Mercedes is wrong on all counts, providing this Court no basis for any of the findings or calculations he seeks. For the reasons set forth in the Government's initial sentencing memorandum, a sentence of imprisonment within the advisory Guidelines range of 262 to 327 months' imprisonment would be sufficient, but not greater than necessary, to accomplish the Section 3553(a) objectives.

---

[1] Mercedes's sentencing submission does not include page numbers; accordingly, this memorandum uses the page numbers assigned by the CM/ECF system.

## II. Discussion

### A. Mercedes's Offense of Conviction Involved at Least 400 Grams of Heroin

This Court heard evidence at trial of agreement to traffic in well over 400 grams of heroin. Indeed, it is likely that Mercedes trafficked in significantly more heroin than those specific transactions about which the Court heard: not only was Mercedes already trying to arrange a multi-kilogram heroin purchase before he was even released from his halfway house to federal supervision (Government Br. 3–4, n.3),[2] which Mercedes has not yet disputed, but it defies both common-sense and this Court's experience to believe that Mercedes—a lifelong, experienced drug dealer whose house was secured almost as if it were a miniature Fort Knox—only had one customer and only served that one customer the time that he was intercepted on a wiretap and then subsequently searched and the minimum of three times his customer happened to bring his girlfriend with him to purchase heroin. However, the Government is only asking the Court, for purposes of the Sentencing Guidelines, to take those specific transactions into account.[3]

---

[2] "Government Br." refers to the Government's April 4, 2019, sentencing submission in this case. (Docket Entry 169).

[3] Although, in this case, the Sentencing Guidelines will ultimately be determined by Mercedes's status as a Career Offender pursuant to U.S.S.G. § 4B1.1, this Court must still first "[d]etermine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed" before it "[d]etermine[s] from Part B of Chapter Four any other applicable adjustments." U.S.S.G. § 1B1.1(a)(2) & (6).

Nonetheless, Mercedes asserts, without explanation: "The P[S]R is incorrect because the offense did not involve at least 400 grams, but less than 700 grams[,] of heroin. The offense that the defendant was found guilty of involved at least more than 100 grams of heroin …." (Mercedes Br. 2). Mercedes is wrong both as a matter of law and a matter of fact.

As a matter of law, Mercedes appears to assert that the Sentencing Guidelines calculations are driven only by the statutory elements of the offense; that is, because Mercedes was found guilty of participating in a conspiracy to distribute or possess with intent to distribute at least 100 grams of heroin, for sentencing purposes, he can only be held liable for at least 100 grams of heroin. (Mercedes Br. 2). This is wrong. While the jury's finding establishes the statutory minimum and maximum—here, because the Government, in its discretion, chose not to file a Prior Felony Information, pursuant to 21 U.S.C. § 851, with regard to either of Mercedes's prior federal narcotics felonies, a minimum of five years' imprisonment and a maximum of 40 years' imprisonment—this Court has an independent duty to determine, by a preponderance of the evidence, the actual drug quantities (or range of drug quantities) for sentencing purposes. *See*, *e.g.*, *United States v. Florez*, 447 F.3d 145, 156 (2d Cir. 2006) (holding that "'[j]udicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker*,'" and, even where "the jury … made a specific finding of heroin quantity … necessary to trigger statutory mandatory minimums," a district court is permitted "to make its own preponderance finding of a higher drug quantity than the amount found by the jury." (quoting *United States v. Garcia*, 413 F.3d 201, 220 n.15 (2d Cir. 2005))); *United States v. Vaughan*, 430

3

F.3d 518, 526–27 (2d Cir. 2005); *United States v. Jones*, 531 F.3d 163, 175 (2d Cir. 2008). Such a determination can be broadly based on the evidence. "Where there is no drug seizure or the amount seized does not reflect the scale of the offense," this Court must "approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1, comment. (n.5); *see also*, *Jones*, 531 F.3d at 175 ("where, as in this case, seized currency appears by a preponderance of the evidence to be the proceeds of narcotics trafficking, a district court may consider the market price for the drugs in which the defendant trafficked in determining the drug quantity represented by that currency.").

Mercedes is also wrong as a matter of fact. The Court heard evidence of Mercedes's participation in a conspiracy to distribute and possess with intent to distribute significantly more than 400 grams of heroin. Among other things:

- At least three times, Christopher Coleman drove to the Bronx to purchase between $8,000 and $10,000 of heroin—at $65 per gram,[4] between about 123 and 153 grams each time—from Mercedes, bringing his girlfriend, Lisa Henderson, with him. (Tr. 173–74). Using simple math, and giving Mercedes the benefit of the doubt—*i.e.*, that there were no more than three such transactions and that they each involved only $8,000—those three transactions alone involve at least 369 grams of heroin.[5]

---

[4] "In Yonkers, for loose, raw heroin, a gram would probably be around $65." (Tr. 51).

[5] It is almost certain—and certainly likely beyond a preponderance of the evidence—that these transactions were, in fact, consummated. Among other evidence supporting such an inference: (1) the fact that Coleman kept returning to Mercedes implies that his relationship was successful; (2) Coleman complained to Henderson when he could not contact Mercedes to get heroin and when O supplied a bad batch of heroin, but never complained that Mercedes was not providing him with heroin on their trips to the Bronx; (3) when O provided Coleman with a bad batch of heroin, Coleman returned to Mercedes

4

- In May 2017, Coleman repeatedly discussed the fact that he still owed Mercedes money for prior shipments of heroin, implying that Mercedes had supplied Coleman with more heroin than that which Coleman purchased with cash. (GX 517, 520, 525, 563, 604).

- On May 23, 2017, Mercedes met with Coleman to provide him with heroin, Mercedes asked Coleman afterward if "it [is] working good," and Coleman explained that he had not yet started using the new supply of heroin because "[i]t's always like this [slow] at the end of the month," but "if it's the same" as the quality of the prior heroin shipment, "then it will be fine." (Tr. 325–26; GX 430 at 11–12, 604, 605).

- On July 3, 2017, Mercedes provided Coleman with heroin. (GX 430 at 15–16, 559, 562, 604). Less than three days later, law enforcement officials seized both that heroin—208 grams—and the $13,530 Coleman had paid Mercedes for that heroin. (Tr. 229–32, 261–63, 265–68, 271, 285–86; GX 10, 219, 430 at 15–16, 559, 562).

The three transactions where Coleman's girlfriend was present plus the July 3, 2017, transaction therefore involved at least 577 grams of heroin—well over 400 grams of heroin—and does not even represent the full scope of transactions about which this Court heard.

### B. Mercedes Was Coleman's Primary Heroin Supplier for at least Many, Many Months

Mercedes got to know Coleman no later than October and November 2015, when he and Coleman shared a room at a halfway house. (Tr. 66–70; GX 818A–B). At around the same time—in November 2015—he contacted a law enforcement agent—who was

---

as his regular supplier, which implies that Mercedes had been regularly supplying Coleman; and (4) subsequent phone calls and text messages show that Coleman was not simply showing up randomly to get heroin from Mercedes, implying that he was not going to the Bronx with money if Mercedes did not have the heroin to provide to him.

5

working undercover at the time—in an ultimately unsuccessful attempt to purchase kilograms of heroin. (Government Br. 3-4, n.3). Even if that was not the beginning of Mercedes and Coleman's criminal conspiracy—and it likely was—Mercedes began supplying Coleman with heroin no later than a year or so later. After all, Coleman moved in with his girlfriend in December 2016 or January 2017 (Tr. 133, 136-37); at that time, Coleman was already trafficking in heroin, keeping some of it in his girlfriend's house (Tr. 137-38). Mercedes was Coleman's supplier, or "plug." (Tr. 131). Indeed, in February 2017, Coleman complained to his girlfriend when he could not get in contact with Mercedes to resupply him one day. (Tr. 172). Coleman and his girlfriend also drove to the Bronx to purchase significant quantities of heroin from Mercedes on at least three occasions before he started using "O" as a backup supplier in around March 2017. (Tr. 173-75). Coleman made clear, though, that Mercedes was his primary supplier, and not his backup supplier: he did not want to keep on driving to Newburgh to purchase drugs from "O," and, as soon as "O" sold him a bad batch of heroin, he turned back to Mercedes, his regular supplier. (Tr. 176-77). Mercedes continued to supply Coleman—even keeping up contact through "Celly Bro" when Mercedes was incarcerated, ensuring that their relationship could continue—until Mercedes and Coleman were arrested on July 6, 2017, each with the proceeds of their latest heroin transaction.

In spite of this mountain of evidence, Mercedes asserts, without explanation or argument, that Mercedes "became an alternative supplier of heroin to Coleman for a brief period of time not exceeding two months." (Mercedes Br. 3). Mercedes's mere *ipse dixit* runs counter to the evidence, is based on nothing, and should be rejected.

6

### C. Mercedes is Not a "Minor Participant," Much Less a "Minimal Participant," as Those Terms Are Defined in U.S.S.G. § 3B1.2(a)

The Sentencing Guidelines provide for a reduction of between two and four levels for a defendant who was a "minor" or "minimal" participant in criminal activity. U.S.S.G. § 3B1.2. The mitigating role reduction applies if a defendant is "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, comment. (n.3(A)). The determination is "based on the totality of the circumstances" and is "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment. (n.3(C)). Relevant factors include:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* In a drug conspiracy case, this Court must evaluate "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Garcia*, 920 F.2d 153, 155 (2d Cir. 1990). This is a highly fact-specific inquiry in which the "dispositive consideration" is the defendant's "'culpability

7

in the context of the facts of the case.'" *United States v. Pena*, 33 F.3d 2, 3 (2d Cir. 1994) (quoting *Garcia*, 920 F.2d at 155).

Here, there can be little question that Mercedes does not qualify for a minor- or minimal-participant reduction. Simply put, he was the supplier of heroin. Accordingly, he was "[t]he most culpable conspirator." *United States v. Sanchez*, 925 F. Supp. 1004, 1013 (S.D.N.Y. 1996), *aff'd*, *United States v. Chalarca*, 95 F.3d 239 (2d Cir. 1996). Moreover, reviewing the *Garcia* factors: (1) Mercedes supplied heroin to the conspiracy's internal distributor; (2) Mercedes's actions were not just important to the success of the venture, but they were essential, as, without Mercedes's heroin, the venture would collapse (and, in fact, the venture had problems when Coleman briefly relied on "O," his alternative supplier); and (3) Mercedes, as the main supplier, was aware of the entire nature and scope of the criminal enterprise, as the heroin originated with him. For this reason, courts have regularly denied role reductions to defendants who were far less culpable in their enterprises than Mercedes was in his. *See, e.g.*, *United States v. Alston*, 899 F.3d 135, 150 (2d Cir. 2018) (no role reduction even though defendant "did not procure or sell drugs himself" because he "nonetheless played a critical part"); *United States v. Kirk Tang Yuk*, 884 F.3d 57, 89 (2d Cir. 2018) (affirming denial of role reduction to defendant who received two kilograms of drugs on consignment to resell where he was "on the same page" as other co-conspirators, and likely understood there were more drugs involved in the conspiracy); *United States v. Pitre*, 960 F.2d 1112, 1127 (2d Cir. 1992) (affirming denial of role reduction for lookout who "was aware of the full extent of the transaction").

Mercedes simply recites the law on role reductions, arguing, in a heading, that this Court "should consider a downward departure[6] from the base offense level in view of [Mercedes's] 'minimal' participation." (Mercedes Br. 3). He never explains in what way he deserves a role reduction, nor could he.

Moreover, even if Mercedes qualified for a role reduction—and he clearly does not—such a reduction would not affect his ultimate Sentencing Guidelines offense level. A role reduction does not apply to career offenders, as it is applied *before* the career offender adjustment. *See* U.S.S.G. § 1B1.1(a)(3) & (6). Accordingly, for a defendant like Mercedes, whose offense level is determined by U.S.S.G. § 4B1.1(b),[7] role reduction makes no difference to his ultimate offense level. *See United States v. Perez*, 328 F.3d 96, 97–98 (2d Cir. 2003) (agreeing with "all the circuit courts that have reached the question agree that 'career offenders' cannot receive a 'minor role' downward adjustment, to the extent that such an adjustment would result in an offense level that falls below the career-offender minimum established by U.S.S.G. § 4B1.1(b)." (citations omitted)).

### D.     There Is No Reason to Vary Below the Applicable Guidelines Range

Mercedes asks this Court to "consider a sentence below the guideline as appropriate for the defendant under the circumstances." (Mercedes Br. 5). He offers no reasons to

---

[6] Although Mercedes refers to a "downward departure," a role reduction under U.S.S.G. § 3B1.2 does not constitute a departure, but rather an "adjustment[] as appropriate related to … role" under the Sentencing Guidelines. U.S.S.G. § 1B1.1(a)(3).

[7] Had Mercedes's pre-career offender offense level exceeded the offense-level minimum established by U.S.S.G. § 4B1.1(b), then a role reduction might matter, but that is not the case here.

consider such a variance, nor is there any. To the contrary, as set forth in detail in the Government's initial sentencing memorandum (Government Br. 9–13), there is every reason, under both the facts and the law, to sentence Mercedes within the advisory Guidelines range of 262 to 327 months' imprisonment. Mercedes has offered nothing to rebut that analysis or conclusion.

### III. Conclusion

For the reasons set forth above and in the Government's initial sentencing memorandum, this Court should sentence Mercedes to a term of imprisonment within the advisory Guidelines range of 262 to 327 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to accomplish the goals set forth in 18 U.S.C. § 3553(a).

Dated:   White Plains, New York
         May 1, 2019

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney for the
                                    Southern District of New York

                          By:   _____
                                    Samuel L. Raymond
                                    Daniel M. Loss
                                    Michael D. Maimin
                                    Assistant United States Attorneys
                                    Tel.: (914) 993-1946 / 1924 / 1952

10