IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RECEIVED
NOV 29 2021
U.S.D.C.
W.P.

LEIBYS MERCEDES,
    Defendant/Petitioner,

vs.

UNITED STATES OF AMERICA,
    Respondent.

Case No. 17-CR-419 (KMK)

**MEMO ENDORSED**

MOTION FOR COMPASSIONATE RELEASE
OR
PARTIAL REDUCTION IN SENTENCE
PURSUANT TO 18 U.S.C. §3582(c)(1)(A)

COMES NOW, Leibys Mercedes (hereinafter known as "Petitioner" or "Mercedes"), pro se, respectfully requesting this Court grant him either compassionate release or a partial reduction in his sentence, for a showing of "extraordinary and compelling reasons," as stated in 18 U.S.C. §3582(c)(1)(A), and would offer the following in support:

### PRO SE STANDARD

"In a pro se case, the court must view the submission by a more lenient standard, 'however inartfully pleaded, [it] must be held to less stringent standards than formal pleadings drafted by lawyers.'" Govan v. Campbell, 289 F.Supp. 2d 289, 291 (N.D.N.Y. 2003); (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972).

### STANDARD OF REVIEW

The compassionate release statute, 18 U.S.C. §3582, as amended by the First Step Act ("FSA") of 2018, authorizes sentencing courts to reduce a term of imprisonment if, after considering the applicable factors set forth in Section 3552(a), it concludes that "extraordinary and compelling reasons warrant such a reduction"

and that "such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. §3582(c)(1)(A). The defendant bears the burden of proving that he or she is entitled to a sentence reduction. <u>United States v. Morales</u>, 2020 U.S. Dist. LEXIS 77037 (D. Conn. May 1, 2020).

Unlike prior versions of the statute, which vested the exclusive authority to bring a motion for compassionate release with the Director of the BOP, Section 3582(c)(1)(A) now permits imprisoned individuals to petition the courts for sentence reductions, even if the BOP opposes the request. See <u>United States v. Brooker</u>, 976 F.3d 228, 231-33 (2d Cir. 2020). The statute specifically instructs that a court may reduce a sentence "upon motion of the Director of Prisons, or upon motion of the defendant after the defendant has fully exhausted a administrative right to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A).

As the Second Circuit recently announced in <u>Brooker</u>, the district court evaluating First Step Act motions brought directly by defendants are therefore not bound by the U.S. Sentencing Guidelines Manual §1B1.13, which addresses only motions for relief brought by the Director of the BOP. See <u>Brooker</u>, 976 F.3D at 230, 235-37 ("Neither Application Note 1(D), nor anything else in the now outdated version of Guideline §1B1.13, limits the district court's discretion"). Instead, the <u>Brooker</u> court concluded, the First Step Act authorizes courts to "consider the full state of extraordinary and compelling reasons that an imprisoned person might bring before them. <u>Id</u>. at 237. "The only statutory limit on what a court may consider to be extraordinary is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason'" <u>Id</u>. at 8 "Moreover, these (considerations) may also interact with the present coronavirus pandemic, which courts around the country, including this Court, have used as a justification for

granting some sentencing reduction motions." Id. at 9. Petitioner Mercedes argues he presents extraordinary and compelling reasons for compassionate release or a partial reduction of his sentence of between 24-40 months.

A court evaluating a motion pursuant to §3582(c)(1)(A) must ask four questions: (I) has the defendant complied with the administrative exhaustion requirement; (II) has the defendant shown extraordinary and compelling reasons warranting a sentence reduction; (III) are the §3553(a) sentencing factors consistant with a lesser sentence than previously imposed; and (IV) is there a particular sentence reduction consistent with the §3553(a) factors that is also warranted by extraordinary and compelling reasons?

I. <u>Administrative Exhaustion Requirement:</u>

On July 8th, 2021, Petitioner Mercedes applied for compassionate release or a partial reduction in his sentence of between 24-40 months, due to his vulnerability to Covid-19 and the presence of the more deadly DELTA variant within the local community. Warden Amy Boncher has failed to respond to Mercedes' Request To Staff Form (See EXHIBIT - A, Copy of Request to Staff Form, dated July 8th, 2021). "[Mercedes] has satisfied the administrative exhaustion requirement because [Mercedes] requested compassionate release [RIS] from the warden of his facility, who [failed to respond to] his request, and more than a month has passed since [Mercedes'] request." See <u>United States v. Henareh</u>, 2021 U.S. Dist. LEXIS 6855, *6 (S.D.N.Y. Jan. 13, 2021).

II. <u>Extraordinary And Compelling Reasons:</u>

Petitioner Mercedes argues "extraordinary and compelling reasons" exist and are shown by the following: (a) Mercedes' risk for reinfection, due to his immunocompromised status, that makes the Covid vaccines less effective; (b) harsh and oppresive conditions of confinment, that have arguably violated Mercedes

-3-

Eighth Amendment right to be free from "cruel and unusual" conditions of confinement; and (c) FCI-Raybrook's deliberate indifference towards Mercede's health & safety by exposing Mercedes to Covid-19 and subsequently contacting Covid, and FMC-Devens deliberate indifference towards Mercedes health & safety by rescinding protocols enacted to mitigate the spread of Covid-19.

(a) Mercedes' Risk Of Reinfection:

Reinfection has sometimes been characterized as rare, the "understanding of reinfection has been constrained by the limited numbers of U.S. Labs that retain Covid testing samples of genetic sequencing." See Why the U.S. is Underestimating Covid Reinfections, Scientific America, JoNel Alecia, Feb. 8, 2021. Though at least one expert has tried to put into context the risk of reinfection within a prison/jail setting (See EXHIBIT - B, Declaration by Tanya Vijayan).

Many courts have recognized the risk for reinfection and its attendant severe outcomes. See United States v. Hood, 2020 WL 6255904 (C.D. Ill. Oct. 23, 2020)(citing the existence of confirmed reinfections in the United States that have resulted in more severe results/outcomes); Unites States v. Barajas, 2020 WL 3676991, at *10 (S.D.N.Y. July 2, 2020); United States v. Jacobs, 2020 WL 3637625, at *5-6 (S.D. Iowa, July 2, 2020); See also, EXHIBIT - C, Article from the New York Daily News, Repeated Covid Infections Plague Fed. Prisons, Risk Is Driving Demands For Compassionate Release.

Additionally, with the rise in mutated strains of Covid-19, in particular the highly contagious and more lethal DELTA variant, in concert with Mercedes' immuncompromised status (Obesity - BMI Exceeding 30%, 20+ year Smoker, Race and Age) and the low rate of FMC-Devens staff submitting to the Covid-19 vaccines ( See EXHIBIT - D, Article New York Daily News, FBOP Union and vaccines). FBOP Director Michael Carvahal testified before Congress that 49% of the FBOP's 37,000 employess have been vaccinated. Petitioner Mercedes argues this Court should get ahead of the forthcoming waive of infection and release Mercedes to avoid his becoming reinfected and potentially dying from the DELTA variant.

-4-

To further support Mercedes' claim of his increased risk to Covid-19, due to his being immuneocompromised, he would direc the Court to review <u>United States v. Sandoval</u>, 2020 U.S. Dist. LEXIS 32750 (W.D. Was. Feb. 22, 2021)[2], where expert witness, Dr. Rakita testified:

> "In studies so far, significantly fewer immunsuppressed patients develop antibodies to SARS-CoV-2, [i.e. Covid-19] compared to the general population. While 95% of the overall population develops SARS-CoV-2 antibodies, 30-35% of people taking immunosuppresive medications, ... do not develop those antibodies. This suggests that the risk of reinfection is likely higher to those patients, ... Dr. Rakita explains that, ... the efficacy of the vaccine in various subpopulations, <u>such as immuneocompromised individuals</u> [like Merecedes], is still unknown. Othe r vaccines, such as the influenza vaccine and Hepatitis B vaccine, have <u>dramatically decreased response in immuneocompromised</u> patients."

This Court must conclude the risk to Petitioner Mercedes is very real and he presents "extraordinary and compelling reasons" due to his medical status and the presence of the more transmissable and deadly DELTA variant's presence at FMC-Devens.

Recognizing the risk posed by the Covid virus Petitioner Mercedes submitted to the two-shot MODERNA vaccine. But due to his immuneocompromised status it is unclear if he has the protection needed to ward off the DELTA variant[2]. This speculation is supported by the countless breakthrough cases among presumably healthy individuals, let alone those who are immuneocompromised.

---

2. See N.Y. Times Aticle, <u>Vaccines Won't Protect Millions With Weakened Immune SYSTEMS</u> (Apr. 15, 2021) https://www.nytimes.com/2021/04/15/health/coronavirus-vaccine-immune-system.html. See also The Atlantic, Covid-19 Vaccines Are Entering Uncharted Territory (Apr. 15, 2021), http://www.theatlantic.com/science/archive/2021/04/immunocompromised-vaccine/618596/. And The Lancet, <u>SARS-CoV-2 Infection Rates Of Antibody-positive Compared With Antibody-negative Health Care Workers In England</u> (Apr. 17, 2021), https://doi.org/10.1016/S0140-6736(21)00675-9).

At a minimum, without scientific conclusion as to the effectiveness of vaccination on those who are immuneocompromised, Covid-19 remains a relevant consideration for this Court. And in the face of uncertainty, Petitioner Mercedes respectfully submits that the Court should "err on the side of caution to avoid potentially lethal consequences." United States v. Yellin, 2020 WL 3488738, at *3 (S.D. Cal. Jun 26, 2020).

Should the Court conclude Mercedes is not at risk due to his being vaccinated, multiple courts have now granted compassionate release, notwithstanding indivual's vaccination, including (among many others):

* United States v. Lonich, 2021 WL 1668062, at *3 (N.D. Cal. Apr, 2021)(compassionate release granted to individual who had Covid-19 and was vaccinated because "uncertainty still surrounds the degree and duration of protection vaccines provide against the virus and its mutation" and expert testimony from infectious disease specialist asserts that COVID reinfections is possible and more likely in prison/jail enviornments);

* United States v. Sweet, 2021 WL 1430836, at *3 (E.D. Mich. Apr. 15, 2021) (granting compassionate release to individual who recovered from Covid-19 and had been vaccinated, noting that breakthrough infections occur, and there is a risk of reinfection, including multiple instances in the BOP, of those already recovered);

* United States v. Darby, 2021 WL 2463841, at *2 (N.D. Ohio June 17, 2021)("The Court acknowledges that Mr. Darby is vaccinated so he is at a reduced risk of contracting a serious form of COVID-19 but being vaccinated does not autoamtically preclude a defendant from demonstrating 'extraordinary and compeling reasons' justifying a sentence modification");

* United States v. Hatcher, 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (granting compassionate release to vaccinated individual with obesity, hypertension, COPD, and HIV, and agreeing that conditions of COVID lockdowns in light of her conditions, justified release, especially because she was unable to engage in mental health care, substance abuse treatment, and other important services "that the Court envisioned her receiving while incarcerated").

-6-

Petitioner Mercedes alleges the sentence this Court imposed is not the sentence it had originally contemplated when Mercedes stood before this Honorable Court and would point to the following conditions of confinement that, arguably, have violated Mercedes Eighth Amendment right to be free from "cruel and unusual" conditions of confinement, those being: Mercedes was denied access to regular exercise; Mercedes has been denied access to programming he requires; Mercedes for periods of time during the pandemic was denied access to his community; and Mercedes was denied access to mental health services, in violation of the United States Consitution.

Access To Recreation:

Exercise is one of the basic needs that prison officials "must provide under the Eighth Amendment. See <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991)("Given current norms, exercise is no longer considered an optional form of recreation, but instead a necessary requirement for mental well being). For long periods of time Petitioner Mercedes, while at FCI-Raybrook, was denied access to outdoor recreation and for long extended period, during lockdowns, was not permitted any recreation at all. The result of this deprivations had a negative impact on Mercedes' mental health as he regularly exercises for the expressed purpose of the beneficial mental health benefits.

Access To Programming:

One of the considerations when imposing sentence on a defendant is the need for a sentence imposed "to provide the defendant with needed educational or vocational training ..." <u>Id</u>. §3553(a)(2)(D). Since the beginning of the pandemic (March 2020), Petitioner Mercedes has been denied access to needed programming, i.e. Non-Residential Drug & Alcohol Programming, Cognitive Behavioral Therapy, Criminal Thinking; Anger Management; and basic psychology support services

-7-

designed to ensure Mercedes does not reoffend. If Mercedes were to be released early he could, as already mandated as conditions of release, obtain services this Honorable Court would deem appropriate to ensure the publics safety and Mercedes reintegration back into Mercedes' community.

Access To Mercedes' Community/Family:

The Federal Constitution provides very little protection for visiting in prison, although visitation is an aspect of the right to free association. See Overton v. Bazzetta, 529 U.S. 126 (2003). Petitioner Mercedes does not argue FCI-Raybrook and FMC-Devens prohibition and/or limited visitation schedule were inappropriate in light of Covid-19, but he would point out that Mercedes is the Father of two young children and two adult children and the harshness on all parties is worthy f this Court's consideration. Another deprivation over the past year, as a result of the frequent lockdowns, was Mercedes access to the telephone and EMAIL system, which he used to communicate with his wife and children, communication during, arguably, the most dangerous period in Petitioners life was unreasonable. How could Mercedes alieve his loved ones concerns or pottentialy relay his final words and wishes. See Johnson v. State of California, 207 F.3d 650 (9th Cir. 2000)("Inmates have a First Amendment right to both communicate with non-prisoners over the telephone ... In addition, denying access to telephones may violate an inmate's right to counsel and right to inmate association").

Prisoners have a First Amendment right to communicate by mail, See Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003), however these rights may be restricted by prison officials. Reasonable restrictions on the purchase of postage and supplies by non-indigent prisoners will be upheld, see Davidson v. Mann, 129 F.3d 700, 702 (2d Cir. 1997), but the wholesale ban on the purchase of stamps would violate not only an inmates First Amendment right to free speech/association, but a denial of

-8-

As of August 17th, 2021, FMC-Devens is reporting 2-inmates and 2-staff members are currently under quarantine after contracting Covid-19. While these numbers appear to be low, FMC-Devens track record in its responce to the numerous prior outbreaks, which can only be ascribed as an abject failure, will result in the numbers of infected rising.

(b)    Mercedes' Sentence Through The Pandemic Has Been Harsh & Oppressive Requiring Consideration For A Partial Reduction In His Sentence:

The Second Circuit has recognized the harshness defendant's have been forced to endure during the ongoing Covid-19 Pandemic and reduced sentences based on the conditions of confinement, risks for reinfection and lack of programming stating: "compassionate release is a misnomer 18 U.S.C. §3582(c)(1)(A) in fact speaks to sentence reduction. A district court could, for instance, reduce but not eliminate a defendant's prison sentence..." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); see also United States v. Garcia, 2020 U.S. Dist. LEXIS 230236 (S.D.N.Y. Dec. 8, 2020)("the court, as noted, concludes that if it were imposing sentence on Garcia afresh, with full foresight of the conditions, it would have sentenced him to 240 months' imprisonment rather than 280 months, and the current extraordinary conditions therefore compel a reduction of his sentence by 40 months, to a total of 240 months); United States v. Rodriguez, 2020 U.S. Dist. LEXIS 181004 (S.D.N.Y. Sept. 30, 2020)("The pandemic aside from posing a threat to [a defendant's] health, has made [a defendant's] incarceration harsher and more punative than would otherwise have been the case. This is because federal prisons, as 'prime-candidates' for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal."); United States v. Mel, 2020 U.S. Dist. LEXIS 74491 (D. Md Apr. 28, 2020)("[T]he actual severity of [defendant's] sentence as a result of the covid-19 outbreak exceeds what the court anticipated at the time of sentencing.").

-9-

that inmate's right to access the court. See Bounds v. Smith, 430 U.S. 817, 824-25 (1997); see also Chandler v. Coughlin, 763 F.2d 110, 114 (2d Cir. 1985). Petitioner Mercedes asserts, while at FCI-Raybrook he was unable to purchase stamps, due to commissary being shut down, this happened on numerous occasions, coupled with the lack of visitation, lack of phone & EMAIL access, would constitute a violation of Mercedes' First & Fifth Amendment rights. Mercedes would assert the ban on community access was calculated, done to hide the poor performance of FCI-Raybrooks handling of the numerous outbreaks of Covid-19.

Failure To Provide Mercedes Psychological Services:

"It is undisputed that treatment a prisoner receives in prison and the conditions under which [Mercedes] is confined are subject to scrutiny under the 'Eighth Amendment.'" Helling v. McKiney, 509 U.S. 25, 31 (1993). "Undue suffering, unrelated to legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014)(citing Estelle v. Gamble, 429 U.S. 97 (1976)). Cruel and unusual punishment consists of the denial of "minimal civilized measures of life's necessities" assessed on "contemporary standards of decency." Rhodes v. Chapman, 425 U.S. 337, 347 (1981).

During the frequent lockdowns that occurred at FCI-Raybrook, the facility failed to provide psychological services, during, arguably, the greatest need for those services as inmates, to include Mercedes, were locked in their cells for extended periods of time, cut off from their loved ones and dealing with a life and death situation (Covid-19 at Raybrook). As a result of this failure Mercedes suffered, and continues to suffer, panick attacks when he is locked in his cell, not knowing if it will be the last time he is let out.

When Mercedes arrived at FMC-Devens the lack of access to psychology services continued. The only services provided/offered were one-on-one encounters in the

laundry room, in earshot and sight of other inmates. How could this conduct be condoned? This is not the quality of service one would expect with a Federal Medcial Center with one of the largest Psychology Department in the BOP and certainly not the "medical care" the court contemplated when sentencing Mercedes! Id, §3553(a)(2)(D).

(c)  FCI-Raybrook's & FMC-Devens Acts Of Deliberate Indifference:

Prison officials have a duty to prevent prisoners from being exposed to contagious diseases. See Helling v. McKinney, 509 U.S. 25, 28 (1993)(Condemning facilities that failed to separate sick inmates from healthy ones): see also Wallis v. Balwin, 70 F.3d 1024, 1076 (9th Cir. 1995)(Applying Helling to exposure to asbestos); Brown v. Mitchell, 327 F.Supp. 2d 615 (E.D. Va. July 28, 2004)(Applying Helling to contagious diseases caused by overcrowded conditions).

In the Spring of 2020, at FCI-Raybrook, Raybrook reported it's first inmates infected by Covid-19, their methods for preventing spread were appauling, as those who were sick were simply quarantined in their cells!! When Petitioner Mercedes reported symptoms of Covid-19 stating he had trouble breathing, Medical Staff told him to "lay down and take it easy for a couple of days." Mercedes was not removed from general population rather he remained in his Unit and infected untolds amounts of inmates. To date Mercedes still suffers from residual effects from the virus, i.e., unexplained chest pains; burning sensation when taking a deep-breath; headaches; and unrelenting fatigue. Simply put, Mercedes was forced to confront a deadly disease by himself with no aid of Raybrook's medical staff.

Upon arrival at FMC-Devens, Mercedes reported his post covid-19 symptoms to his medical care provider, but again little or nothing was done, nor documented, to treat Mercedes.

And finally, Mercedes argues FMC-Devens is currently acting with deliberate indifference towards Mercedes health and safety. First, FMC-Devens has repopulated

the housing units to pre-covid numbers. The repopluation is in direct conflict with President Biden's executive order, given on January 23rd, 2021, where he mandated all entering/working in a federal facility must wear masks and socially distance. Mercedes argues this is impossible, due to the majority of cells containing 2-inmates and the limited common space within his unit, resulting in Mercedes sheltering in his cell for the majority of his time.

Petitioner Mercedes asserts the recent rescinding of protocols initiated to mitigate the spread of the virus, in conjunction with the low rates of FBOP employees accepting the vaccine (See EXHIBT - D) will assuredly result in a mammoth outbreak, those protocols being, but not limited to: (1) the combining of Units JA & JB for dining, to which there is a no mask requirement; (2) combining Units JA, JB & P Unit for outdoor/indoor recreation, again with a no mask requirement or social distancing; (3) FBOP Staff refusing to vaccinate or concede to regular testing, that being a temperature check upon arrival; (4) Inmates not reporting symptoms of Covid-19, due to there placement in the Segregated Housing Unit, under extremely harsh conditions; (5) lack of chemicals, soaps and PPE; (6) the reopening of visitation; (7) the combining of JA, JB & P Units for educational programming and the access to the law library; and (8) Correctional Officers are conducting cell searches without the use of PPE. It would appear that FMC-Devens is not doing everything they can, as they boast in every response and the numbers reflect their poor performance, leaving Petitioner Mercedes at considerable risk of becoming reinfected.

Petitioner Mercedes recognizes the foregoing deprivations are actionable under Federal Tort, but feels they fall squarely within the U.S.S.G. Section 1B1.13, Application Note , Subsection (D)'s catchall provision, granting this Court jurisdiction over the foregoing claims. Petitioner Mercedes argues the sentence he has been serving, over the past 18-months, is not the sentence this Court had originally contemplated and has been harsher then other defendant's sentenced (and

-12-

served) prior to the pandemic and those who will come before this Court after the pandemic has subsided. Petitioner Mercedes respectfully requests this Court, for a showing of "extraordinary and compelling reasons" grant his motion for compassionate release, or in the alternative consider a partial reduction in Mercedes sentence of between 24-40 months, for good cause shown.

III. SECTION 3553 SUPPORTS COMPASSIONATE RELEASE OR PARTIAL REDUCTION

When extraordinary and compelling reasons are found the court must "consider [] the "sentencing factors factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. §3582(c)(1)(A). Section 3553(a) "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Kimbrough v. United States, 552 U.S. 85 (2007)(emphasis added)(quoting 18 U.S.C. §3553(a)). These goals include:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2). The other applicable sentencing factors the court must consider are "the nature and characteristics of the defendant" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. §3553(a)(1)-(6).

Petitioner Mercedes having completed his administrative remedies and presented extraordinary and compelling reasons, the only dispositive issue this Court must

-13-

decide is whether the §3553(a) factors are consistent with Mercedes' request for compassionate release or a partial sentence reduction in his sentence.

Under §3582(c), it is true that "the default presumption is that the court cannot modify a term of imprisonment, and that it can only change a sentence if the defendant presents extraordinary and compelling reasons that warrant such a reduction." United States v. Greene, 2021 WL 354446, at *16 (D.D.C. Feb. 2, 2021). However, when the "defendant makes a showing, <u>the presumption then effectively shifts in the favor of his release, and the court must determine whether any of the purposes of punishment set forth in section 3553(a) require keeping the defendant incarcerated nevertheless</u>: that is notwithstanding the extraordinary and compelling circumstances that would otherwise justify releasing him. Id. (emphasis added). In other words, where a defendant demonstrates extraordinary and compelling circumstances, which Petitioner Mercedes concededly has, the presumption shifts in favor of his release or in the alternative a modification of Mercedes' sentence.

Although the circumstances of Mercedes' present offense qualified him for a serious sentence, that this Court originally imposed, the sentencing purposes of punishment does not warrant a sentence to include exposure to a life-threatning illness (Covid-19 & the DELTA Variant). In fact, the Eighth Amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions. Helling, 509 U.S. at 28. The service of a sentence in violation of the Eighth Amendment does not "promote respect for the law."

The sentence Petitioner Mercedes has been forced to serve is a far cry from the sentence this Court had originally contemplated. Some of these differences effect all inmates during the pandemic, such as constant lockdowns and severe conditions of confinement necessary to reduce the risk of Covid-19 infections in the close quarters of prison. Another difference, while not affecting the entire federal population, was sadly widespread at FCI-Raybrook : the overwhelming risk of contracting Covid-19. But most importantly, unlike most inmate at FCI-Raybrook &

Fmc-Devens or otherwise, Petitioner Mercedes, because he is immunocompromised and suffering from numerous conditions listed by the CDC as "high risk factors", faces a heightened risk that if he contracts the more deadly DELTA Variant he would suffer serious illness or even death. The Court plainly must consider the risk of serious illness or death to which Petitioner Mercedes is exposed to when assessing the "kinds of sentences available," as well as whether the sentence reflects "just punishment" and whether the sentence thus far has provided Mercedes needed medical care, training and other correctional treatment, Mercedes argues the foregoing have not been provided and due to the FBOP's modified operational schedule Mercedes is unlikely to receive the necessary treatment or educational goals he is guaranteed under the United States Constitution.

Futhermore, both the increased risks Mercedes continues to face, due to the variants and lack of protection from the vaccines, may actually enhance the deterent effect of his prison sentence, by making his sentence harsher, both physically and emotionally, than otherwise normally have been.

Petitioner Mercedes submits for this Court's review his up-to-date picture, pursuant to United States v. Pepper, 562 U.S. 476, 490-93 (2011), showing he is not a danger to himself or his community, in the form of his most recent FBOP Progress Report and PATTERN Score (utilized to assess and individuals risk of recidivism)(See EXHIBIT - E, Progress Report & PATTERN Score). But one of the most compelling reasons this Court needs to consider is the effect Mercedes sentence has had on those he loves, find enclosed letters of support from Mercedes children, wife, family memebers and others, pleading this Honorable Court show mercy on Mercedes in light of the serious risk of death or serious injury from Covid-19. (See EXHIBIT - F, Letters of Support). Further find enclosed a personal letter to the Court from Defendant/Petitioner Mercedes, regarding the past 18-months and the effects it has posed on him and his family.

IV.            SENTENCE REDUCTION IS CONSISTENT WITH §3553(a)

Finally, the court should ask whether there is a sentence reduction consistent with §3553(a) factors that is warranted by extraordinary and compelling reasons. A motion for a sentence reductions can be granted only where there is a nexus between the two because the court may reduce a defendant's sentence only if the "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. §3582(c)(1)(A)(i) (emphasis added).

Petitioner Mercedes has presumptively made a showing of extraordinary and compelling reasons for Compassionate Release or a Partial Reduction In Sentence, and feels any additional factors that are deficient in this Court's eyes can be met by well crafted additional conditions of Supervised Release to include, but not limited to the following: mandatory ankle bracelet monitoring, mandated drug & alcohol programming, curfews and the conversion of the remainder of his term of sentence to additional years of supervised release.

Find enclosed EXHIBIT - G, Petitioner Mercedes' detailed release plan, for this Courts review, under seal.

WHEREFORE, a showing of extraordinary and compelling reasons, Petitioner Mercedes requests the following relief:

    (1) GRANT Mercedes Compassionate Release, reducing his sentence to time served; or

    (2) Reduce Mercedes Sentence by 24-40 months, due to the harshness of his conditions of confinement; or

    (3) Appoint Counsel to fully brief this Honorable Court on the merits of Mercedes claims.

I, Leibys Mercedes, do hereby declare under the penalty of perjury, pursuant to 28 U.S.C. §1746, the foregoing facts represented in this instant motion are true and correct.

Respectfully submitted,

*[signature]*

Leibys Mercedes, pro se

CERTIFICATE OF SERVICE

I, Leibys Mercedes, do hereby declare under the penalty of perjury, pursuant to 28 U.S.C. §1746, that on 22 day of November, 2021, I placed in the prison mailbox, pursuant to the "prison mailbox rule," a true and correct copy of Mercedes Motion For Compassionate Release or Partial Reduction In Sentence, First Class Postage affixed, addressed to the following:

United States Attorney's Office
Southern District of Newyork
300 Quarropas Street
White Plains, NY 10601

Dated: 11-22, 2021.

Leibys Mercedes, # 24547-050
Federal Medical Center Devens
P.O. Box 879
Ayer, MA 01432

This motion for compassionate release, pursuant to 18 U.S.C. 3582, is denied. First, Mr. Mercedes has not established that there are extraordinary and compelling reasons for his release. His concerns about Covid, while understandable, are mitigated by the fact that Mr. Mercedes was vaccinated in June 2021. Moreover, as the Government points out, Mr. Mercedes' claims about his health conditions are largely exaggerated or otherwise do not put Mr. Mercedes in the category of highest risk. He is overweight and not obese; there are insufficient records to establish that Mr. Mercedes is immunocompromised, and there is no record that he was diagnosed with Covid (which even if true, would only add to his immunity from re-infection). And, to the extent Mr. Mercedes is complaining about the conditions of his confinement, any remedy needs to be addressed in a Section 2241 Petition in the district where he is housed. Finally, even if Mr. Mercedes could meet his burden of showing extraordinary and compelling reasons under Section 3582, consideration of the Section 3553(a) factors argues strongly against release. Mr. Mercedes is a career drug dealer who sold heroin after having been twice convicted of narcotics distribution. His choices have caused hardship to his family, not the sentence he received as a result of his conduct. Given that he has served less than a third of his sentence, an early release would seriously undermine deterrence, both general and specific, and respect for the law.

So Ordered.

12/17/21

-17-