IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

WHITE PLAINS DIVISION

LEIBYS MERCEDES,  )
     Defendant/Petitioner,  )
  )
vs.  )    Case No. S2 17-CR-00419(KMK)
  )
UNITED STATES OF AMERICA,  )
     Respondent.  )

---

## MOTION FOR REDUCTION IN SENTENCE
### PURSUANT TO 18 U.S.C. §3582(c)(1)(A)

---

COMES NOW, Leibys Mercedes (hereinafter known as "Petitioner" or "Mercedes"), defendant, pro se respectfully submitting his motion for reduction in sentence, pursuant to 18 U.S.C. §3582(c)(1)(A), citing Mercedes's sentence, throughout the course of the Covid-19 pandemic, has been particularily harsh/oppresdsive, and could not have been forseen by this Court at the time of sentencing. The foregoing coupled to Mercedes's rehabilitative efforts make a strong showing of "extraordianry and compelling reasons," for a modest reduction in sentence of between 12-48 months.

### PRO SE STANDARD

As Petitioner Mercedes appears before this Court pro se, it is "well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006); See Hughes v. Rowe, 449 U.S. 5, 9 (1980)(holding that a pro se party's pleadings must be liberally construed in favor and are held to less stringent standards then pleadings drafted by lawyer.).

STANDARD OF REVIEW

Petitioner Mercedes moves for a reduction in his sentence pursuant to 18 U.S.C. §3582(c)(1)(A) which provides, in relevant part, that:

> "the court ... upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf or the
> lapse of 30 days from the receipt of such a request by the warden of
> the defendant's facility, whichever is earlier, may reduce the term
> of imprisonment if it finds that ... extraordinary and compelling
> reasons warrant such a reduction ... 18 U.S.C. §3582(c)(1)(A)."

The Court therefore considers (1) whether the defendant has exhausted his administrative remedies; (2) has the defendant made a showing of extraordinary and compelling reasons warranting relief; and (3) "the facors set forth in section 3553(a) to the extent they are applicable." §3553(a).

The Court may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release," and "district court's discretion in this area-as in all sentencing matters-is broad." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020.) "The only statutory limit" on the discretion is that "rehabilitation alone shall not be considered an extraordinary and compelling reason." Id. 237-38 (quoting 28 U.S.C. §994(t)[1]. "The defendant has the burden to show he is entitled

---

1. In April 2023, the United States Sentencing Commission proposed amendment changes to §1B1.13 comment n.1. Relevant to Petitioner's claims are found in proposed subsections: "(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death... (D) The defendant presents the following circumstances-- (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state or local authority; (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoingoutbreak of infectious disease or the ongoing public health emergency described in clause (i); and (iii) such risk cannot be adequately mitigated in a timely manner.

to a sentence reduction" under section 3582(c)(1)(A). United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

Petitioner has requested a partial reduction in his sentence. The Second Circuit has observed:

> "[I]t bears remebering that compassionate release is a misnomer. 18 U.S.C. §3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place." Brooker, 976 F.3d at 237.

Based on the foregoing, Petitioner Mercedes submits, for a showing of extraordiunary and compelling reasons/circumstances, due to overly harsh conditions of confinement as a result of the Covid-19 pandemic, he requests a sentence reduction of between 12-48 months.

(1)                EXHAUSTION OF ADMINISTRATIVE REMEDIES

On July 20th, 2023, Petitioner Mercedes submitted a request to staff form, addressed to Warden Michael Underwood, requesting a reduction in his sentence, based on the harshness of his confinement during the Covid-19 pandemic (See EXHIBIT A, Request to Staff Form, dated 07/20/2023). Warden Underwood has failed to bring a motion on [Mercedes's] behalf" and "the lapse of 30 days from the receipt [] request" has occurred. 18 U.S.C. §3582(c)(1)(A). Petitioner Mercedes's motion for a reduction in senténce is properly before this Hononrable Court and is ripe for decision.

(2)                EXTRAORDINARY AND COMPELLING REASONS

Petitioner Mercedes sets forth extraordinary and compelling reasons are exhibited by the following: (a) during the pendancy of the Covid-19 pandemic, Petitioner was exposed to harsh & oppressive conditrions of confinement, that could fairly be described as "cruel and unusual"; (b) Mercedes has taken full advantage of programming offered by the FBOP, reducing his risk for recidivism.

(a)     Harsh & Oppressive Conditions Of Confinement:

Petitioner Mercedes argues the conditions of confinement he was exposed to while incarcerated at FMC-Devens and FCI-Fort Dix, during the course of the pandemic, were overly harsh & oppressive, amounting to "cruel and unusual punishment." Petitioner further states, had this Court been aware of the onerous lockdowns, lack of visitation, limited programming availability, limited medical care that was brought on by the pandemic or the squalid conditions Mercedes was forced to endure at FCI-Fort Dix, e.g. exposure to contaminated water, asbestos and black mold, this Honorable Court would have found mitigating circumstances to further deviate from Mercedes sentence.

The conditions of incarceration during the pandemic have been severe, including "onerous lockdowns," United States v. Hatcher, 2021 U.S. Dist. LEXIS 74760 (S.D.N.Y. Apr. 19, 2021), restrictions such as the "curtailment of facility programming and visitation," Uinted States v. Oquendo, 2023 U.S. Dist. LEXIS 8073 (S.D.N.Y. Jan. 17, 2023), and outbreaks made worse by the difficulties of social distancing in prison–which left inmates susceptible to and fearful of serious illness or death.[2]

Undoubtebly, "a day spent in prison under extreme lockdown and a well-founded fear of contracting a once-in-a-century dealy virus excacts a price on a prisoner beyond that imposed by an ordinary day in prison." United States v. McRae, 2021 U.S. Dist. LEXIS 8777 (S.D.N.Y. Jan. 15, 2021). Some courts have recognized that detention during the pandemic is "essentially the equivalent of either time and a half or two times what would ordinarily be served." United States v. Elias, 579 F. Supp. 3d 374, 378 (E.D.N.Y. 2022);  See also United States v. Cruz, 2021 U.S. Dist. LEXIS 66485 (D. Conn. Apr. 6, 2021)(finding extraordinary

---

2.  See Eddie Burkhalter et al., Incarcerated and Infected: How the Virus Tore Through the U.S. Prison System, N.Y. Times (Apr. 10, 2021), https://www.nytimes.com/interactive/2021/04/10/us/covid-prison-outbreak.html?smid=url-share

and compelling circumstances existed after considering the defendant-inmate's "underlying medical conditions, the risk posed by Covid-19 outbreaks at Allenwood and the severity of punishment due to the Covid-19 pandemic."); and United States v. Green, 2020 U.S. Dist. LEXIS 99129 (D. Md. June 4, 2020)("[T]he Court finds that the historic Covid-19 pandemic, the fact that [the defendant] has been incarcerated inone of the detention facilities most profoundly impacted by Covid-19, and the fact that he has a health condition that may place.him at high risk for serious illness collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. §3582(c)(1)(A).").

Petitioner Mercedes submits he suffered many of the same conditions, if not all those encountered by Hatcher, McRae, Elias, Cruz and Green. During his confinement at FMC-Devens and FCI-Fort Dix Petitioner endured the following conditions, including, but not limited to:

FMC-Devens Conditions:[3]

Lockdowns: during the course of the pandemic, Petitioner was frequently locked in his cell, for 24-hours a day. He was only permitted 1-hour of reprieve 3-times a week to shower and try to contact his family, but due to the large numbers of inmates trying to use the phones and computers, Mercedes often.was unable to speak/communcate with his fiance, her children or immediate family. This restriction had a profound impact on Mercedes mental health, causing bouts of anxiety follwed by depression, not knowing if he or his loved ones would contract Covid-19 and perish. Further compounding this problem was FMC-Devens seizing incoming/outgoing mail, fearing it would promote the spread of the virus. While Mercedes understands the need for Devens to conduct lockdowns, in order to mitigate the spread of the virus, he faults them for failing to provide psychology services, during, arguably, one of the worst periods in modern history.

---

3. While many of the conditions visited on Mercedes at FMC-Devens were also present at FCI-Fort Dix. Mercedes conditiopns claim for Fort Dix focuses on his exposure to contaminated water, asbestos and black mold.

<u>Visitation</u>: From March of 2020 through June of 2022, inmates at FMC-Devens and FCI-Fort Dix were denied contact visitation and for long periods of time all visitation was cancelled, due to the risk of exposure to Covid-19 from visits. In June of 2022, visitation was restored to 1-hour visits once a week : opposed to four, eight-hour visits, per week pre-pandemic. Maintaining family ties is an important aspect of rehabilitation and physical contact with children and loved ones promotes strong family bonds. For Petitioner this period of non-contact broke him mentally and caused significant injury to his relationship with his fiance and her children, who would often visit Mercedes. This basic need can not be overlooked by this Court and while all Mercedes bonds have been repaired, it goes without saying this dark period of time will forever be re-membered.

<u>Access to Medical & Psychological Services</u>:  Petitioner Mercedes alleges during the pandemic (2020 through 2022), the FBOP/FMC-Devens?FCI-Fort Dix's health care was substandard, boardering on negligent/indifferent. Often Mercedes would reach out to psychology services, in an attempt to try to deal with the anxiety and depression he was enduring, but due to pandemic restrictions all psychology services were curtailed. Mercedes should have been provided this basic need, during a period of time where inmates at FMC-Devens were left in there cells, most infected with Covid-19, fearing for there safety or fearing for there loved ones. It goes worth mentioning, FMC-Devens had the second worst Covid-19 infection rate and one of the highest number of deaths in all the Bureau (11-deaths), some of the deceased were known to Mercedes.

During the pandemic, medical care was limited to treating those infected with Covid-19, all other care was reduced, if not eliminated, e.g. all dentalcare was stopped (restored in early 2022); all outside consults were restricted to critical care only; and all routine medical services (annual exams, bloodwork) were placed on hold, or very limited. The resulting restrictions meant that

when Mercedes complained of an abcess in his mouth, with corresponding dental
pain, his conditions went untreated or when he complained of lower back pain,
due to inactivity (laying in bunk 18-20 hours a day), he was not examined and
only prescribed Tylenol. It should be recognized, during the course of the
pandemic Petitioner Mercedes was not "provide[d] ... needed ... medical care."
§3553(a)(2)(D).

Recreation & Programming: Due to the numerous outbreaks of Covid-19 at FMC-Devens
and FCI-Fort Dix, indoor/outdoor recreation and institutional programming (e.g.
RDAP, Money Smart, Anger Management etc...) took a back-seat to safety. This
resulted in prolonged periods of inactivity, having a dramatic effect on Mercedes'
physical & mental health. At times, Mercedes was forced to workout in his cell,
due to recreations closure for nearly 2-years. Physical conditioning is very
important to Mercedes, he takes pride in his physique, often working out 2-3
hours a day with others, acting as a per se trainer. Due to inactivity and suff-
ering bouts of depression, Mercedes gained 30 lbs, making him obese (Mercedes
stands 5', 7" tall and weighed at that time 220 lbs, yielding a Body Mass Index
of 34.60). Additionally, Mercedes suffers from chronic backpain, exercise/stretch-
ing alleviated the frequent pain he dealt with on a regular basis, meaning for
roughly a 2-year period, Mercedes suffered physical pain, as a result of his
inability to recreate on a regular basis.

It goes without saying, during the Covid-19 pandemic, most of the programs
offered by the Federal Bureau of Prisons ceased. This deficiency had a direct
effect on Mercedes goals towards rehabilitation. Mercedes had hoped, by now, to
have completed the Residential Drug & Alcohol Program, Cognitive Behavioral
Therapy, Threshold & Anger Mangement (all the foregoing Mercedes has submiited
requests for, and was told he is on a waiting list). In June of 2022, many of
the programs Mercedes had requested were reopened, but the floodgate of inamtes

wanting to earn First Step Act Time Credits, meant the FBOP has doled out pro-
ramming to inmates who were due to be released within the next 18-months. So,
the BOP's priority based strategy means Mercedes can not expect to receive
programming, this Court anticipated he'd receive, for the foreseeable future.

FCI-Fort Dix Conditions: In the Winter of 2022, Petitioner Mercedes was redes-
ignated to FCI-Fort Dix Camp. Many, if not all, inmate housing were former army
barricks contructed in the mid-50's, utilizing asbestos products (pipe insulation,
fire retardent plaster and asbestos flooring tiles). With direct knowledge that
asbestos causes cancer, the FBOP did nothing to abate it from the housing units,
to include Mercedes housing unit. Mercedes asserts he was regularly exposed to
asbestos whenever the floors were stripped & buffed, which created asbestos dust,
which freely circulated withing the unit. Another example of exposure is when
tiles would peel off the floor, revealing asbestos mastic glue or when an inmate
would purposfully peel away the asbestos pipe covering, creating a warming spot
for food.

A review of the plethera of inmate filings, related to conditions of con-
finement, shows a common complaint, black mold. Petitioner asserts black mold
was present in all the bathrooms in his housing unit, usually hanging from ex-
posed piping, directly over the showers. Adding insult to injury, inmates were
instructed to weekly powerwash the pipes, walls, floors & showers, dispercing the
black mold throughout the housing unit. See Ross v. Ortiz, 2022 U.S. Dist. LEXIS
27397 (D.N.J. Feb. 15, 2022); United States v. Barndt, 2020 U.S. Dist. LEXIS
244966 (D.N.J. Dec. 30, 2020); and Bingham v. Federal Bureau of Prisons, 2020
U.S. Dist. LEXIS 141119 (D.N.J. Aug. 6, 2020). Discussing asbestos & mold.

Most troubling of all is the fact, while at FCI-Fort Dix, Mercedes was for-
ced to consume, bath in and cook with toxic water, which the FBOP knew of as
early as 2017, but did nothing to protect and/or warn the inmates about the
contaminated water.

In 2017, Congress conducted  a hearing regarding military facilities suspected of, or containing, chemicals contained in aqueous film-forming foam ("AFFF"), specifically PFOA & PFOS, which if ingested, even in minute particles, has been shown to cause serious health concerns, to include cancer and death. See Dep't of Defense, Aqueous Film-Forming Foam Report to Congress, https://www.denix.osd.mil/derp/home/documents/aqueous-film-forming-foam-report-to-congress/. Clearly listed, among facilities found to contain PFOS & PFOA ("PFAS") is "Joint Base McGuire-Dix-Lakehurst" and Fort Devens (Mercedes also asserts he was exposed to PFAS at FMC-Devens).

In 2019, the Attorney General for the State of New Jersey filed a lawsuit against Joint Base McGuire-Dix-Lakehurst for contaminating the local groundwater with PFAS, resulting from Airforce Base McGuire's (directly abutting FCI-Fort Dix) use of AFFF, also known as firefigher foam, in fire suppression exercises, that penatrated the groundwater. "According to the complaint, the U.S. has found three private drinking wells near the military base with combined levels of PFOS and PFOA ranging from 153 ppt. to 1,688 ppt., far exceeding states's limits. On base testing by the State in 2016 of 21 suspected release areas found groundwater monitoring wells with combined levels of PFOS and PFOA as high as 264,300 ppt."[4] The EPA has set a lifetime exposure level to PFOA & PFOS of 0.07 ?g/L, and this year lowered that level to .004 and .02 ppt./L. Goto https://gov.info.gov/content/pkg/FR-2022-06-21/pdf/2022-13158.pdf.

On 06/04/2023, Bloomburg Law reported the joint litigation case the New Jersey Attorney General had joined, In re Aqueous Film-Forming Prods. Liab. Litigation, Civil No. MDL 2:18-mn-2873-RMG (D.S.C. 2018), was settled out of court, for an undisclosed sum.  Similarily, in an inmate filed pro se case, the Federal Bureau of Prisons settled out of court, regarding the inmate's claims

_____

4. See Burlington County Times, State Suing Feds Over Contamination On Joint Base Other Federal Facilities, https://www.burlingtoncountytimes.com/story/news/2021/01/15/new-jersey-sues-federal-government-contamination-joint-base-fort-dix/4166899001/.

of contaminated water, exposure to asbestos and black mold, nearly identical to the ones presented by Mercedes. See Stiles v. Hollingsworth, Civil No. 17-2693 (RMB, 2020 U.S. Dist. LEXIS 97990 (D.N.J. Jun. 3, 2020).

The exposure of inmates to hazardous conditions violates the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 33 (1993). While Mercedes recognizes many Court's state civil tort is the remedy for the foregoing exposures, Mercedes states it is also cognizable of relief under 18 U.S.C. §3582(c)(1)(A).

In summary, the unique circumstances of this case, the nearly twenty-seven months Petitioner Mercedes served in custody under squalid conditions at FCI-Fort Dix and pandemic conditions at FMC-Devens, combined with his rehabilitative efforts makes a compelling argument for a modest reduction in his sentence. See United States v. Robles, 553 F. Supp. 3d 172, 183 (S.D.N.Y. 2021)("As courts have widely recognized in granting compassionate release motions since March of 2020, the unexpected rigors of incarceration during the pandemic present 'extraordinary and compelling' reasons that justify a sentence reduction under §3582(c)(1)(A)."). This Court must then consider how much of a reduction is jsutified. See e.g. United States v. Lora, 2022 U.S. Dist. LEXIS 65734 (S.D.N.Y. Apr. 8, 2022)("a modest additional sentence reduction of ten months is warranted, to account for the severity of the conditions of confinement."); United States v. Dones, 2021 U.S. Dist. LEXIS 243953 (D. Conn. Dec. 22, 2021)("the Court will reduce Mr. Done's sentence [from a term of 100 months] to a term of sixty monhts to reflect the extraordinary conditions to which he has been subjected."); and Uited States v. Tucker, 2021 U.S. Dist. LEXIS 158909 (S.D.N.Y. Aug. 23, 2021) (reducing 164-month sentence by one year because "the realities of incarceration have changed."). Petitioner

Petitioner requests the same relief provided Lora, Dones, and Tucker, based on harsh & oppressive conditions endured, brought on by a once-in-a-lifetime pandemic.

(c)    <u>Petitioner's Rehabilatative Efforts</u>:

"Pursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reasons for purposes of this policy statements." §1B1.13 comment n.1. But the United States Sententencing Guidelines Commission has made proposed amendments, to include amending §994(t), which in relevant part amends: "[h]owever, rehabilitation of the defendant while serving a sentence may be considered in combination with other circumstances in determining whether and what extent a reduction in the term of imprisonment is warranted."

The Second Circuit, when addressing Compassionate Release motions, have consistently taken a defendant's rehabilatation into consideration when weighing §3582(c)(1)(A)(i) & §3553(a) factors. See <u>United States v. Rodiriguez</u>, 492 F. Supp. 3d 306 (S.D.N.Y. 2020)("[W]hile rehabilitation alone is insufficient, it can interact with the present coronavirus pandemic to create an extraordinary and compelling reason for a sentence reduction.") And some courts have found the inability of the FBOP and/or lack of programming available as "extraordinary and compelling." See <u>United States v. Hatcher</u>, 2021 U.S. Dist. LEXIS 74760 (S.D. N.Y. Apr. 19, 2021)("The Court gave considerable weight to the "critical mental health and rehabilitative services" that the defendant needed and the court had "envisioned her receiving while incarcerated."); <u>United States v. Dones</u>, 2021 U.S. Dist. LEXIS 243953 (D. Conn. Dec. 22, 2021)(finding that "Mr. Dones has been confined in quarantine" and therefore, "he reports receiving no drug rehabilitation counselling, no vocational training, no english language instruction- no programming or training whatsoever-since the pandemic began.").

Despite the majority of roadblocks placed in Petitioner Mercedes's way, he was able to complete many programs, including, but not limited to:

1. <u>GED Earned In BOP</u>, date completed, 11/02/2022;
2. <u>Drug Education</u>, date completed, 03/12/2020
3. <u>Parenting Program Part 1</u>, date completed, 10/08/2019
4. <u>African American History</u>, date completed, 05/13/2020
5. <u>Man-Up-Growth & Pers. Change</u>, date completed 11/05/2020
6. <u>Associate Cert. Electronic Tech.</u>, date completed, 11/17/2020
7. <u>Intro To Physical Activity, Healthy Weight, Heart Disease, Diabetes Prevention, and Overwight and Obese</u>, dates completed, 03/04/2023 - 03/10/2023. (See EXHIBIT - B, FBOP Progrees Report).

Ontop of the foregoing programs, Mercedes has completed an additional 8-Adult Continuing Education programs and is on the waiting list for the Non-Residential Drug & Alcohol Program, Anger Management, Parenting II and Basic Cognitive Skills. Mercedes posits, had it not been for the restrictions placed on him, resulting from the pandemic, he could have achieved many more programs and states since the announcment of First Step Earned Time Credits awards, most, if not all, programs have an extensive waiting list. Regardless, this Court should conclude, Mercedes has used his time wisely, obtained his GED (which is of great weight), obtained a vocational certificate in electronics, taken drug education course (despite the FBOP stating he does not need RDAP), taken numerous physical education courses, which he intends on implimenting into his everyday life and as a physical trainer, and taken courses so that he can be a better parent.

Another aspect of rehabilitation is an inmates contact/ties with his community and loved ones . Mercedes has maintained constant contact with his fiance and her children, his immediate family and friends he's known for most of his life. The vast majority have written letters of support on Mercedes behalf, hoping this Court recognizes the changes they have witnessed first hand, as it relates to Merceds character and rehabilitation efforts (See EXHIBIT - C, Letters of Support).

Petitioner Mercedes cites several cases where defendant's were released or received sentence reduction, due in alrge part, to their showing of extensive

-12-

programming efforts and strong family/comminity ties. See United States v. Ramsay, 538 F. Supp. 3d 407 (S.D.N.Y. May 11, 2021)(defendant "offers emotional support to his family and friends, excels in his employment, takes advantage of opportunities to learn new skills, and donates to charity," and "[m]any family members and friends submitted letters describing Ramsey's maturation."); United States v. Rios, 2020 U.S. Dist. LEXIS 230074 (D. Conn. Dec. 8, 2020)(defendant has taken over fifty courses offered by the BOP and maintained positive relation- ships with his family, who wrote in support of his release) and United States v. Rodriguez, 492 F. Supp. 3d 306, 313 (S.D.N.Y. 2020)(defendant has obtained his GED and completed an apprenticeship program, and his motion was supported by "[a]n extraordinary collection of letters-from fellow inmates, friends, ...").

Like Ramsay, Petitioner Mercedes has matured in prison, excelled in his prison job as an orderly, and learned a vocation, as a Electronic's Tech. Like Rios, Petitioner Mercedes has maintained strong family bonds with his Fiance and her children, who have all written letters in suppport. And like Rodriguez, Petitioner Mercedes earned his GED and received the praise of fellow inmates, who he often mentored (See EXHIBIT-E, Letters of Support - Inmates). The man petitioning this Court today is a far cry from the man who stood before this Honorable Court in 2018. Pursuant to Pepper v. United States, 526 U.S. 476, 492 (2011), Mercedes "post sentencing rehabilitation ... [is] highly relevant [and] provides the most up-to-date picture of [Mercedes] 'history and characteristics.'" Id. (altered).

(3)                      SECTION 3553(a) FACTORS

Before granting Petitioner Mercedes's motion for reduction in sentence, the Court must consider whether Mercedes poses "a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g), U.S.S.G. §1B1.13(2), and must consider "the factors set forth in section 3553(a). 18 U.S.C. §3582(c)(1)(A).

The first prong of the foregoing analysis is easily satisfied by review-
ing Mercedes Risk for Recidivism Report,[5] often referred to as a "PATTERN Score,"
to which the Government's own experts concede he is a "Low" risk for recidivism
and has "out-custody" status. But as Mercedes is merely seeking a reduction in
his sentence, not immediate release, the Court need not consider this matter,
unless the Court were to consider converting the remainder of Mercedes sentence
to an additional termof supervised release, then the foregoing is highly relevant.

The second prong, the section 3553(a) analysis, include, inter alia: "the
nature and circumstances of the offense," "the history and characteristics of
the defendant,""the need for the sentence imposed ... to reflect the seriousness
of the offense, to promote respect for the law, and provide just punishment for
the offense," "to afford adequate deterrence to criminal conduct," "to protect
the public ...," "to provide the defendant with needed educational or vocational
training, [or] medical care," "the kind of sentences available, and the need to
avoid unwarranted sentencing disparities." 18 U.S.C. §3553(a)(1)-(6).

On 05/06/2019, Petitioner Mercedes was found guilty of vilation 21 U.S.C.
§846 and 21 U.S.C. §841(b)(1)(B) - Conspiracy to Distribute & Possess With Intent
to Distribute Heroin. This Court sentenced Mercedes to a 180-month term of impris-
onment, followed by 5-years of supervised release. Mercedes has served 48.2 %
of his Statutory term of imprionsment and is sceduled to be released, via good-
time credit release, on 04/29/2029.(See EXHIBIT - D, FBOP Sentence Computation)

Petitioner Mercedes does not dispute his offense was not serious, and de-
served a stiff penalty for his part in the conspiracy. But Mercedes would argue
he has since accepted full responsibility for his actions and taken full advan-
tage of the opportunities presented to him while incarcerated, completing num-
erous programs, to include obtaining his GED, despite the restrictions placedd
on him by the Covid-19 pandemic. Additionally Mercedes has kept close ties to loved

---

5. See EXHIBIT-D, PATTERN Score       -14-

ones. Mercedes has acted as a mentor to other inmates and remained infraction free (for the most part) over the 6+years of his incarceration. The foregoing, but not limited to, "provides the most up-to-date picture of [Mercedes's] 'history and characteristics'" Pepper v. United States, 562 U.S. 476, 492 (2011). For all intent and purpose the goals of sentencing have been achieved, arguably justifying a modest reduction in sentence of between 12-48 months.

During Mercedes incarceration he endured harsh & oppressive conditions of confinement and contracted Covid-19 at FMC-Devens & FCI-Fort Dix. The exposure of inmates to hazardous conditions, to include contaminated drinking water, asbestos & balck mold, violates the Eighth Amendment and can't be construed to promote respect for the law. See Helling v. McKinney, 509 U.S. 25 (1993). Surley Mercedes exposure to the foregoing is compensatable, in the interests of justice, through a reduction in his sentence. This Court should be satisfied Mercedes was "provid[ed] just punishment for the offense," which has "afford[ed] adequate deterence to criminal conduct."

When weighing the §3553(a) factors the Court must determine "the kind of sentences available." Mercedes states partial reductions are available. See Brooker, 976 F.3d at 237 ("A district court could, for instance, reduce but not eliminate a defendant's sentence..."). Should the Court be swayed by Petitioner's rehabilitation, and feel he no longer poses a threat/danger to the community, Mercedes and his Family PRAYS, this Court "end the term of imprisonment but impose a significant term of [] supervised release in place." Id.

The Court, and the public, should feel confident the Mercedes no longer poses a danger or risk to the community, due to Mercedes obtaining "needed educational [and] vocational training." Mercedes earned his GED and has taken vocational courses in Electronic Technician & Physical Trainer. In fact, Mercedes has hopes and goals of one day becoming a personal trainer and opening his own full service gym and life coaching facility. Mercedes has turned his back

on a life of crime. Time and the loss of contact with his loved ones has taught Mercedes the true meaning of life : His relationship with his loved ones, commun-ity, and God. Through hardwork and hopefully the compassion of this Court, Mer-cedes hope to jump-start his life and become a productive member of his community.

It is not uncommon, especially within the Second Circuit, for Prisoner's to assert there sentence has been disparite due to the Covid-19 pandemic and Courts have recognized these disparities and ajusted sentences accordingly. Pet-itioner Mercedes has exampled specific circumstances that are aguably "extra-ordinary and commelling" reasons why this Court should reduce his current sent-ence from 180-months by between 12-48 months, and consider releasing Mercedes into the custody of the U.S. Probation Services, to serve out the rest of his sentence under supervised release.

WHEREFORE, a presumptive showing of "extraordinary and compelling reasons," Mercedes PRAYS this Court GRANT the following relief:

(1)         This Honorable Court reduce Mercedes's sentence by between 24-48 months; and/or

(2)         Grant Mercedes immediate release, converting the remainder of his sentence to an additional term of supervised release, after Mercedes has presen-ted an acceptable release plan, approved by Probation Services; and/or

(3)         This Court appoint Counsel to fully brief this Honorable Court on the claims raised in this instant Motionf for Reduction in Sentence; and/or

(4)         Any relief this Court deem equitable.

I, Leibys Mercedes, do herby declare under the penalty of perjury, pursuant to 28 U.S.C. §1746, the foregoing facts asserted in the attached motion are true and correct, to the best of Mercedes's knowledge and understanding.

Respectfully submitted,

Dated: 08/30/2023

Leibys Mercedes, Defendant, Pro se
Federal Correctional Institution
P.O. Box 1000
Cresson, PA 16630

CERTIFICATE OF SERVICE

I, Leibys Mercedes, do hereby declare under the  penalty of perjury, pursuant
to 28 U.S.C. §1746, that on  9 - 13        , 2023, I placed int he prison mail-
box a true and correct copy of the attached Motion for Reduction in Sentence,
First Class Postage affixed, addressed tot he following:

UNITED STATES ATTORNEY'S OFFICE

Leibys Mercedes, #24547-050
FCI-Loretto
P.O. Box 1000
Cresson, PA 16630

Application for "compassionate release," under 18 U.S.C. Section 3582, is denied.  This is effectively the third such application by
Mr. Mercedes and he largely repeats arguments and claims that have already been rejected and are otherwise without merit.  First
Mr. Mercedes has not established that he has exhausted his administrative remedies.  In the absence of proving that he filed a
claim with the warden, this Court has no authority to grant the request.  Second, there is nothing extraordinary or compelling about
Mr. Mercedes' situation that merits release.  His claims about poor conditions do not come close to justifying early release and
instead are better suited to a Section 2241 application, as the Court has previously noted.  His claims about Covid are equally
unpersuasive, as he has access to vaccines and otherwise appears to be in satisfactory health.  None of this is undermined by his
latest claims about being obese, which are suspect given the varying claims he has made about his height and weight.  The latter
can change, the former almost never does.  Nor do the assertions about rehabilitation change the outcome as they are not recent,
with most pre-dating the pandemic, or extraordinary.  Third, and finally, consideration of the Section 3553(a) factors tips decidedly
against Mr. Mercedes.  He is a serial drug dealer who sold heroin from a half-way house and he has not yet        served a majority
of his sentence.  Granting this application, especially so soon after denying it twice, would undermine respect for the law and
general deterrence.

So Ordered.

1/9/24

-17-