UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| LEIBYS MERCEDES, <br><br>                              Petitioner, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br>                              Respondent. | No. 22-CV-5123 (KMK) |
| UNITED STATES OF AMERICA <br><br> v. <br><br> LEIBYS MERCEDES, <br><br>                              Defendant. | No. 17-CR-419 (KMK) <br><br> OPINION & ORDER |

Appearances:

Leibys Mercedes
FCI Fort Dix
Joint Base MDL, NJ
*Pro Se Petitioner*

Daniel Loss, Esq.
Michael D. Maimin, Esq.
Samuel Raymond, Esq.
United States Attorney's Office
New York, NY
*Counsel for Respondent*

KENNETH M. KARAS, United States District Judge:

Leibys Mercedes ("Mercedes" or "Petitioner"), proceeding pro se, has filed a Petition for a Writ of Habeas Corpus (the "Petition"), pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his conviction for conspiring to distribute and possess with intent to distribute heroin, in

violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  (*See generally* Pet. for Writ of Habeas Corpus ("Pet.") (Dkt. No. 1, 22-CV-5123; Dkt. No. 270, 17-CR-419).)[1]  In the Petition, Mercedes argues that three of his attorneys—Bruce Koffsky, Esq., Chukwuemeka Nwokoro, Esq., and Lawrence Gerzog, Esq. were constitutionally ineffective.  For the foregoing reasons, the Petition is denied.

I.  Background

A.  Factual Background

In November 2015, while awaiting release at a federal halfway house in the Bronx, Mercedes and Christopher Coleman, his co-defendant, started a new heroin-distribution organization.  Soon after Coleman was released from the half-way house, Mercedes—working out of the Bronx—began supplying Coleman with heroin, which Coleman then sold.  (Govt. Sent'g Mem. ("Sent'g Mem.") at 3–4 (Dkt. 169).)  As part of their joint venture, Mercedes and Coleman met several times between May and July 2017.  (*Id*. at 4.)  Law enforcement officers arrested Coleman and Mercedes in their respective apartments, finding approximately 208 grams of heroin (worth approximately $13,520) in Coleman's apartment, and $13,530 in cash in Mercedes's jacket pocket.  (*Id*. at 4–5.)  On the day of Mercedes's arrest, Indictment 17-CR-419 was unsealed, charging five defendants—including Mercedes—in one count with participating in a conspiracy, from February 2017 up to and including June 2017, to distribute and possess with intent to distribute 100 grams and more of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  (*See generally* Dkt. No. 1, 17-CR-419.)  Eventually, all of Mercedes's co-defendants pled guilty, leaving Mercedes as the sole defendant left for trial.  On June 4, 2018, Mr. Nwokoro sought to substitute in as Mercedes's counsel and to adjourn trial (which was then

---

[1] Certain of the Parties' papers were filed on Petitioner's criminal docket, No. 17-CR-419, and certain on Petitioner's civil docket, No. 22-CV-5123.  The docket citations indicate on which docket each document was filed.

scheduled to begin a week later). (Letter from Chukwuemeka Nwokoro, Esq., to Court (June 4, 2018) 1 (Dkt. No. 86, 17-CR-419).) The following day, a grand jury returned Superseding Indictment S1 17-CR-419, which charged Mercedes in a single count with participating in a conspiracy, from January 2017 up to and including July 2017, to distribute and possess with intent to distribute 100 grams and more of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). (Dkt. No. 87, 17-CR-419.) That same day, Mercedes—through Mr. Koffsky, who was appointed to represent Mercedes under the Criminal Justice Act—moved to strike the S1 Indictment as "unjustifiable as to time and prejudicial as to [e]ffect," or, in the alternative, for a continuance of the trial. (Def's Mem. of Law in Supp. of Mot. To Strike 3 (Dkt. No. 89, 17-CR-419).) Also that same day, the Court held a conference at which it relieved Mr. Koffsky and substituted in Mr. Nwokoro. (Conf. Tr. (June 5, 2018 Conf.) 12–14 (Dkt. No. 205, 17-CR-419).) At that conference, the Court also found that there was no prejudice from the S1 Indictment and declined to strike it. (*Id*. at 9–10.) However, the Court did adjourn the trial to October 22, 2018, to allow Mr. Nwokoro to prepare for trial. (*Id*. at 9–11.) On September 26, 2018, the Government re-presented the case to a grand jury, which returned Indictment S2 17-CR-419, which was virtually identical to the S1 Indictment.[2] Two days later, Mercedes moved to dismiss the S2 Indictment, arguing that: (1) it "d[id] not describe any overt acts made in furtherance of the conspiracy and therefore fail[ed] to charge the crime with sufficient precision to inform the defendant of the charge with enough detail that he may plead double jeopardy in a future prosecution based on the same set of facts," (Def's Mot. To Strike 4 (Dkt. No. 127, 17-CR-419)); (2) it was "based on new testimony" and "the charge [may have] rel[ied] on different evidence or

---

[2] The Government explained that it sought the S2 indictment to correct testimony that had been presented to the grand jury that returned the S1 indictment. (Mem. in Opp. to Mot. To Strike 3 (Dkt. No. 130, 17-CR-419).)

3

materially broaden[ed] the charges made in the original indictment," (*id*. at 4–5); and (3) it required new discovery which would force a continuance which would violate the Speedy Trial Act, (*id*. at 5). In the alternative, Mercedes demanded additional, though unspecified, discovery. (*Id*.) At the final pretrial conference, on October 25, 2018, the Court denied Mercedes's Motion. (Conf. Tr. (Oct. 25, 2018 Conf.) 28–30 (Dkt. No. 161, 17-CR-419).) Trial commenced on October 29, 2018, and ended on November 7, 2018, when a jury found Mercedes guilty of the sole count in the S2 Indictment. (*See* Dkt. Nos. 174–80, 17-CR-419.) Mercedes moved for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, (*see* Dkt. No. 150, 17-CR-419), which was denied, (*see* Order (Dkt. No. 190, 17-CR-419)). The Court imposed a below-Guidelines sentence of 180 months' imprisonment. (Judgment (Dkt. No. 187, 17-CR-419).) After conviction, Mercedes moved for appointment of new counsel to represent him on appeal and Mr. Gerzog was appointed. Mercedes appealed his conviction, arguing that there was insufficient evidence to sustain the jury's verdict. The Second Circuit affirmed Mercedes's conviction in a summary order. *United States v. Mercedes*, 851 F. App'x 275, 276–78 (2d Cir. 2021).

B.  Procedural History

Petitioner filed the instant Petition on June 15, 2022, seeking to vacate his sentence. (*See* Pet.) On August 9, 2022, Respondent filed its Opposition to the Petition ("Opp'n Mem."). (Dkt. No. 274, 17-CR-419). [3]

---

[3] In 2021, the Court appointed Daniel Hochheiser, Esq., to assist Mercedes with a motion for compassionate release and later to assist him with a § 2255 application. (*See* Order (Dkt. No. 240, 17-CR-419).) However, after Mercedes filed a pro se § 2255 motion, the Court relieved Mr. Hochheiser at his request. (Memo Endorsement (Dkt. No. 272, 17-CR-419).)

II.  Discussion

A.  Standard of Review

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a).[4] "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quoting *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995)).  To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d Cir. 2017) (summary order).

---

[4] 28 U.S.C. § 2255(a) provides, in full:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). To justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *See Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). Finally, because Petitioner is appearing pro se, the Court construes the Petition and his other submissions "liberally and interpret[s] [them] to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks omitted) (emphasis in original); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (italics, quotation marks, and citation omitted)).

B.  Analysis

As noted, Mercedes argues that three of his attorneys were constitutionally ineffective. In particular, he argues that: (i) attorneys Nwokoro and Gerzog failed to challenge the Superseding Indictments in this case as untimely because they were returned more than 30 days after Mercedes was arrested, (Pet. 5); (ii) attorney Nwokoro failed to adequately investigate and/or prove that no criminal act occurred within the District of Columbia or a "place purchased within the district in a union state," (Pet. 6); (iii) attorneys Koffsky and Nwokoro failed to object to the Government's use of the grand jury as an investigative body, (Pet. 7–8); and (iv) attorney Gerzog failed to raise on appeal this Court's failure to dispose of two motions to strike the Superseding Indictments, (Pet. 9).

### 1. Ineffective Assistance – Standard of Review

Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Id.* at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.*

A petitioner will not meet the first prong based solely on disagreements with counsel's strategy or advice. Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is the petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Tanveer v. United States*, No. 06-CR-1135, 2019 WL 430262, at *4 (S.D.N.Y. Feb. 4, 2019) (same). Thus, to satisfy this prong, a petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing counsel's conduct, "a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, "[the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." *United States v. Caracappa,* 614 F.3d 30, 46 (2d Cir. 2010) (alteration adopted) (internal quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the

outcome of the proceeding," as "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693 (citation omitted). "'[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, Nos. 11-CV-2175, 08-CR-523, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (alteration in original) (quoting *United States v. Weiss*, 930 F.3d 185, 199 (2d Cir. 1991)).  Moreover, "a court hearing an ineffectiveness claim must consider the totality of the evidence . . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695–96.

### 2.  Merits

#### a. Speedy Trial

Petitioner argues that trial counsel (Mr. Nwokoro) and appellate counsel (Mr. Gerzog) failed to object to the timeliness of the Superseding Indictments. The particular argument appears to be that these superseding indictments were filed more than 30 days after Petitioner was arrested. (Pet. 5).

Under the Speedy Trial Act, subject to certain exceptions not applicable here, "[a]ny . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . . in connection with such charges." 18 U.S.C. § 3161(b). The purpose of the Speedy Trial Act is to "expedite the process of *pending* criminal proceedings, not to supervise the exercise by a prosecutor of his investigative or prosecutorial discretion." *United States v. Roman,* 822 F.2d 261, 266 (2d Cir.1987) (emphasis in original) (quotation marks omitted). "[Section 3161(b) of the Act] was meant in part to ensure that accused individuals do not suffer for more than thirty days without being formally charged."

8

*United States v. Hajduk,* 370 F. Supp. 2d 1103, 1108 (D. Colo. 2005). More particularly, the thirty-day limit is "to insure that individuals will not languish in jail or on bond without being formally indicted on particular charges." *Id.* (quoting *United States v. DeJohn,* 368 F.3d 533, 538 (6th Cir. 2004)).

"Although the Speedy Trial Act does not contain the words 'superseding indictment,' both the Second Circuit and [courts in] this District have considered how to treat a superseding indictment under § 3161(b)." *United States v. Deas*, No. 07-CR-73, 2008 WL 5063905, at *2 (D. Conn. Nov. 24, 2008) (citing *Roman,* 822 F.2d at 266 and *United States v. Glover*, No. 08-CR-4, 2008 WL 4696120 (D. Conn. Oct. 21, 2008)). In cases where the "untimely superseding indictment pleads the same charges based upon the same facts as an earlier indictment," there is no violation of the Speedy Trial Act and no dismissal is required. *Glover*, 2008 WL 4696120, at *4 (citing *United States v. Martinez-Espinoza*, 299 F.3d 414, 416–17 (5th Cir. 2002)). That is precisely what happened here. The Superseding Indictments charged Petitioner with violations of 21 U.S.C. §§ 846 and 841(b)(1)(B), the same charges in the original Indictment, albeit with an expansion of the time frame. As such, the Superseding Indictments "inherit[ed] the clock of the original [Indictment.]" *United States v. Gambino*, 59 F.3d 353, 362 (2d Cir. 1995).[5] Therefore, there was no Speedy Trial Act violation.[6]

---

[5] Similarly, "[t]here would be no Speedy Trial Act violation if the superseding indictment merely added facts to a charge set forth in the original indictment if those facts were present in the complaint." *Deas*, 2008 WL 5063905, at *2; *accord United States v. Carrasco,* 257 F.3d 1045, 1052–53 (9th Cir. 2001) (holding that a superseding indictment, "issued while the original indictment was pending and which reasserted the same charge," even where it asserted additional factual allegations supporting the charge, inherits the (tolled) thirty-day clock of the original indictment).

[6] In fact, "a superseding indictment issued more than thirty days after a defendant's arrest and adding a completely new charge to those contained in the original indictment (and the complaint) . . . does not violate the Speedy Trial Act. Such a charge does not inherit the original

Moreover, there could be no prejudice from counsel's decision not to challenge the timeliness of the Superseding Indictments, because there was no remedy from any such Speedy Trial Act violation. Petitioner was first charged in this case by way of an *indictment*. There is only a remedy for a violation of § 3161(b) where a defendant was charged in a *complaint*: Specifically, "[i]f in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment is filed within the time limit prescribed by [§] 3161(b) . . . , such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). Here, no complaint was filed charging Petitioner with an offense. Accordingly, even had the Superseding Indictments violated the Speedy Trial Act—and they did not—there would have been no basis for dismissal. *See Napolitano*, 761 F.2d at 137 (holding that only specific charges contained in the criminal complaint are subject to dismissal if brought in an untimely indictment); *United States v. Deas*, 596 F. Supp. 2d 319, 323 (D. Conn. 2009) ("The case law involving the thirty-day rule is very clear: it is only when a superseding indictment asserts a charge that was included *in the criminal complaint* but was not included in the original, timely indictment that [§] 3161(b) is violated." (emphasis in original)).

---

complaint's thirty-day clock but rather starts its own, new clock." *Deas*, 2008 WL 5063905 at *2; *see also Glover*, 2008 WL 4696120 at *4 (superseding indictment containing charges that differ substantially in "time, place and manner" from criminal episodes in the complaint does not violate Speedy Trial Act); *United States v. Gomez–Olmeda*, 296 F. Supp. 2d 71, 78 (D.P.R. 2003) (citing cases in the 5th, 7th, 9th, and 11th Circuits holding that a superseding indictment issued more than thirty days after a defendant's arrest which adds entirely new charges to those contained in the complaint and original indictment does not violate the Speedy Trial Act). It is only when a superseding indictment includes a charge that was in the criminal complaint but was not in the original indictment that § 3161(b) is potentially violated. *See United States v. Napolitano*, 761 F.2d 135, 137–38 (2d Cir. 1985) (only specific charges contained in the criminal complaint are subject to dismissal if brought in an untimely indictment); *Deas*, 2008 WL 5063905 at *2 (same); *United States v. Cortinas*, 785 F. Supp. 357, 362 (E.D.N.Y. 1992) (same). That did not happen here.

Thus, there was no basis for either counsel to raise a Speedy Trial objection to the Superseding Indictments.

### b. Criminal Law Venue

Petitioner next argues that his trial counsel (Mr. Nwokoro) failed to "present and investigate" the "locus . . . of the alleged criminal conduct," which Petitioner asserts was prejudicial because he "intended to prove [that] he committed no criminal act within the District of Columbia or any place purchased within the district in a union state as alleged in the indictment." (Pet. 6). The most charitable interpretation of this argument is that the Government had the burden of establishing that Petitioner committed the charged criminal acts in Washington, D.C. or on federally owned/controlled land. This claim lacks any merit.

First, Petitioner was charged with violating the federal narcotics laws, which are spelled out in Title 21 of the United States Code. These laws do not limit prosecution of narcotics to offenses which occurred only in Washington, D.C. or on federal land. Indeed, by the plain language of the most relevant provisions here, there are no territorial limitations. *See* 21 U.S.C. § 841(a) (providing that it "shall be unlawful for any person knowingly or intentionally . . ."); § 846 (providing that "[a]ny person who attempts or conspires to commit any offense" shall be guilty). Thus, any federal district, including this one, can be the place of prosecution for federal narcotics laws, *see* 18 U.S.C. § 3231 (noting that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States"). There is, of course, the requirement that the criminal conduct charged take place, at least in part, in the district in which the prosecution is brought. *See* 18 U.S.C. § 3237 (noting that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district

11

in which such offense was begun, continued, or completed"). However, that requirement was satisfied here as all Indictments charged Petitioner with violating the narcotics laws, at least in part in the Southern District of New York. Moreover, the Court instructed the jury that, to convict Petitioner, it had to find by a preponderance of the evidence that "at least one act in furtherance of the crime charged in each count occurred within the Southern District of New York, which includes, among other places, the Bronx and Yonkers." (Trial Tr. 443–44 (Dkt. No. 180, 17-CR-419).)

Accordingly, any "investigation" into Mercedes's "alibi defense"—presumably, that Mercedes was not in "the District of Columbia or any place purchased within the district in a union state," (*see* Pet. 6)—would have been fruitless and would not have been a defense to the charges in this case.

### c. The Grand Jury's Investigation Function

Next, Petitioner argues that two of his lawyers (Mr. Koffsky and Mr. Nwokoro) were ineffective because they did not prevent the Government from "utiliz[ing] the Grand Jury's proceedings[] as an investigative method to develop it[s] case in violation of [Petitioner's] rights to a fair and unbiased[ed] Grand Jury Proceeding." (Pet. 7–8).

Petitioner appears to be suggesting that the Government improperly deployed the Grand Jury to investigate this case. As a general matter, this claim misunderstands "the grand jury's historic role [as] an investigative body." *See United States v. Washington*, 431 U.S. 181, 191 (1977). "It is, of course, improper for the Government to use the grand jury for the sole or dominant purpose of preparing for trial under a pending indictment." *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994). However, the "investigative power of a grand jury does not necessarily end with the return of an indictment." *United States v. Jones*, 129 F.3d 718, 723 (2d

Cir. 1997). For example, "[p]ost-indictment action is permitted to identify or investigate other individuals involved in criminal schemes, or to prepare superseding indictments against persons already charged." *Id.* (citation omitted).

Here, Petitioner has not identified any evidence obtained through abuse of the Grand Jury after it returned Superseding Indictments. In fact, Petitioner's complaint appears to be that the Grand Jury was not "fair and unbiased" because it learned about Petitioner's criminal activities, even though the very purpose of the Grand Jury is to learn about potential criminal conduct and determine whether any charges should be brought based on evidence of such criminal conduct. In any event, any "bias" in the presentation before the Grand Jury—and Petitioner has identified none—is harmless as a matter of law, because his conviction cured any defect in the grand jury presentation. *See United States v. Mechanik*, 475 U.S. 66, 70–72 (1986) (holding that "the petit jury's verdict rendered harmless any conceivable error in the [grand jury's] charging decision that might have flowed from [any] violation[s]."). Thus, Petitioner's counsel were not remotely ineffective for not challenging the Superseding Indictments and there was no prejudice from the absence of any such challenge.

### d. Motions to Strike

Finally, Petitioner argues that his appellate counsel (Mr. Gerzog) "should have notice[d]" that "there were at least two unanswered motion[s] still pending before the district court to strike" the Superseding Indictments. (Pet. 9.)

This argument fails because it is untrue. The Court denied the motions to strike before trial. (Conf. Tr. (June 5, 2018 Conf.) 8–11 (Dkt. 205, 17-CR-419) (finding, in response to Petitioner's motion to strike the S1 Indictment, that there was no prejudice from the filing of the indictment, but continuing the trial date, as Petitioner requested); Conf. Tr. (Oct. 25, 2019 Conf.)

28–30 (Dkt. 161, 17-CR-419) (denying Petitioner's motion to strike the S2 Indictment in its entirety)).  Moreover, even if the Court had not resolved both motions, Petitioner and has not explained what prejudice he suffered, as the motions were meritless for the reasons the Court gave when it denied the motions—which reasons Petitioner has not contested.  There is therefore no prejudice to Petitioner because he has not established what potentially meritorious appellate claim his counsel could have made.

Thus, Petitioner has not established that his trial and appellate counsel were ineffective or that he suffered any prejudice from their representation of him.

### III.  Conclusion

For the foregoing reasons, the Petition is dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Division of Parole*, 209 F.3d 107, 111–12 & n.8 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a [petitioner]'s good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of Court is respectfully directed to enter judgment for Respondent in Case No. 22-CV-5123, close Case No. 22-CV-5123, and mail a copy of this Opinion to Petitioner.

SO ORDERED.

Dated: March 5, 2024
       White Plains, New York

                                          KENNETH M. KARAS
                                        United States District Judge